## JAMES A. MOHAMED *v.* RUSSELL MICHAEL, JR.

[No. 83, September Term, 1976.]

*Decided March 18, 1977.*

The cause was argued before SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ.

*Matthew J. Kastantin* for appellant.

*Henry E. Weil,* with whom were *Belli, Weil & Jacobs* on the brief, for appellee.

ELDRIDGE, J., delivered the opinion of the Court.

In this case we are again presented with questions relating to the reach of the Maryland long-arm statute, Maryland Code (1974), § 6-103 of the Courts and Judicial Proceedings Article.

James Mohamed, a Canadian citizen, instituted an action against Russell Michael, a resident of Kentucky, in the Circuit Court for Montgomery County, for abuse of process, malicious prosecution, false imprisonment, and defamation. Michael, pursuant to Maryland Rule 323, filed a motion raising preliminary objection of lack of jurisdiction over the person. The circuit court, after a hearing, granted the motion and dismissed the declaration. Mohamed appealed from this order to the Court of Special Appeals, and we issued a writ of certiorari prior to a decision by that court.

The allegations contained in the declaration pertinent to the issue of personal jurisdiction are as follows. Mohamed had entered into a contract with Michael in Kentucky, agreeing to purchase from Michael some race horses. Mohamed also executed a promissory note payable to Michael requiring periodic payments of the contract purchase price. Several payments were made on the note by checks drawn on the account of Medicrown Farms, Ltd., signed by officers of Medicrown other than Mohamed. These checks were accepted by Michael in satisfaction of the

promissory note. None of these checks was ever signed by Mohamed, either individually or in a corporate capacity.

On April 30, 1975, a check was sent to Michael, again drawn on the account of Medicrown Farms, Ltd., and signed by the secretary of Medicrown, for the amount due on May 1, 1975, on the note executed by Mohamed. Again, Mohamed's signature did not appear on the check, either individually or in a corporate capacity. Upon presentment, the check was returned to Michael for insufficient funds. It is alleged that Michael thereafter caused his agents, Maryland attorneys, to engage in "intensive negotiations" with Mohamed in Maryland, where Mohamed was temporarily residing, to obtain payment on the note. It is further alleged that there were "numerous telephone conversations and meetings conducted in the State of Maryland" and that during these negotiations "the Defendant Michael and his agents consistently threatened criminal prosecution against the Plaintiff personally, if the payments were not made as demanded."

Ultimately, according to the declaration, Michael caused criminal proceedings to be instituted against Mohamed in the State of Kentucky. The declaration further stated that Michael claimed in the criminal proceedings that Mohamed personally had issued a bad check in satisfaction of the payment due for the horses. Mohamed was charged with "theft by deception." As a result of the criminal proceedings instituted in Kentucky, a fugitive warrant was issued in Maryland, and Mohamed was arrested in Maryland. After the arrest "the Defendant Michael, personally and through his agents, continued to negotiate with the Plaintiff in the State of Maryland" to secure payment on the note. It was agreed that if payment on the note were made, the criminal complaint would be withdrawn and that Michael would "use his best efforts" to have the criminal proceedings dismissed. Subsequent to these negotiations, satisfactory arrangements for the payment of the note were made and Michael had the criminal proceedings dismissed. It was further alleged that at all times the defendant Michael and his agents knew that the check, which was the basis of the criminal action, was

not signed by Mohamed either individually or in a corporate capacity.

In a memorandum in support of his motion raising preliminary objection, Michael contended that the allegations of the declaration were insufficient to satisfy the requirements of § 6-103 which authorizes jurisdiction over a nonresident defendant. He did not, however, for the purposes of challenging the court's jurisdiction, dispute any of the factual allegations contained in the declaration. After a hearing, the trial court granted the motion and dismissed the declaration, agreeing with Michael that the activities of the defendant and his agents within the State as alleged in the declaration were insufficient to satisfy the requirements of the long-arm statute.

Section 6-103 of the Courts and Judicial Proceedings Article provides in part:

> "(b) *In general.* — A court may exercise personal jurisdiction over a person, who directly or by an agent:
>
> "(1) Transacts any business or performs any character of work or service in the state;
>
> * * *
>
> "(3) Causes tortious injury in the state by an act or omission in the state;
>
> "(4) Causes tortious injury in the state or outside of the state by an act or omission outside the state if he . . . engages in any other persistent course of conduct in the state . . . ."

Mohamed contends that the activities of Michael or his agents satisfy the requirements of subsections (b) (1), (b) (3) and (b) (4). He contends that the intensive negotiations conducted with Michael in Maryland, during which threats were made to use criminal process, amount to both a transaction of business and a persistent course of conduct within the purview of subsections (b) (1) and (b) (4). Moreover, he contends that the threats of criminal prosecution and the accusation that he was guilty of theft by

deception communicated to others in the State by Michael's agents caused tortious injury in the State by an act in the State within the meaning of subsection (b) (3). We agree with Mohamed that the activities of Michael's agents in Maryland constitute a transaction of business within subsection (b) (1) of § 6-103, and that the trial court erred in dismissing the declaration for want of jurisdiction over the person. Therefore, we need not consider Mohamed's alternate contentions that the activities alleged in the declaration were also within the purview of subsections (b) (3) or (b) (4) of the long-arm statute.

Recently, in *Geelhoed v. Jensen,* 277 Md. 220, 224, 352 A. 2d 818 (1976), we noted that before personal jurisdiction may be asserted under the long-arm statute, it must first be determined whether the statute authorizes the assertion of personal jurisdiction, and, if so, whether the exercise of personal jurisdiction would be consistent with the Due Process Clause of the Fourteenth Amendment. However, this Court has consistently indicated that these two considerations are interrelated, as it was the intent of the Legislature in enacting the long-arm statute to expand the personal jurisdiction of the courts to the extent permitted by the Fourteenth Amendment. *Geelhoed v. Jensen, supra,* 277 Md. at 224; *Krashes v. White,* 275 Md. 549, 558-559, 341 A. 2d 798 (1975); *Lamprecht v. Piper Aircraft Corp.,* 262 Md. 126, 130, 277 A. 2d 272 (1971); *Groom v. Margulies,* 257 Md. 691, 700-701, 265 A. 2d 249 (1970); *Harris v. Arlen Properties,* 256 Md. 185, 195-196, 260 A. 2d 22 (1969); *Vitro Electronics v. Milgray,* 255 Md. 498, 504-505, 258 A. 2d 749 (1969); *Novack v. Nat'l Hot Rod Ass'n,* 247 Md. 350, 353-354, 231 A. 2d 22 (1967); *Van Wagenberg v. Van Wagenberg,* 241 Md. 154, 164-165, 215 A. 2d 812, 27 A.L.R.2d 379, *cert. denied,* 385 U. S. 833, 87 S. Ct. 73, 17 L.Ed.2d 68 (1966); *Gilliam v. Moog Industries,* 239 Md. 107, 111, 210 A. 2d 390 (1965).

The constitutional standard by which it is determined whether a court may, consistent with the Due Process Clause of the Fourteenth Amendment, exercise personal jurisdiction over a nonresident defendant was set forth in

*Internat. Shoe Co. v. Washington,* 326 U. S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95, 161 A.L.R. 1057 (1945), as follows:

> "[D]ue process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' "

However, as the Court noted in *Hanson v. Denckla,* 357 U. S. 235, 253, 78 S. Ct. 1228, 2 L.Ed.2d 1283 (1958), "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."

It is within the context of these constitutional requirements that we have interpreted the meaning of "transacts any business" as used in subsection (b) (1) of the long-arm statute. In *Van Wagenberg v. Van Wagenberg, supra,* in interpreting the same provision of a New York statute, this Court held that the execution of a settlement agreement in New York was a transaction of business within the meaning of the statute, sufficient for a New York court to exercise personal jurisdiction over the parties. The Court relied upon *Longines-Wittnauer Watch Co. v. Barnes & Reinecke,* 15 N.Y.2d 443, 209 N.E.2d 68, 261 N.Y.S.2d 8 (1965), in which the Court of Appeals of New York interpreted the phrase "transaction of any business" as referring to any "purposeful activity" within the state. *Van Wagenberg v. Van Wagenberg, supra,* 241 Md. at 166.

This interpretation of the phrase "transact any business" as used in the Maryland statute was employed by this Court in *Novack v. Nat'l Hot Rod Ass'n, supra.* In *Novack* the agent of a foreign corporation which sponsored and regulated automobile drag races inspected a Maryland track on four occasions and certified the track as safe. The Court held that these actions were purposeful activity within the State and constituted a transaction of business within the

statute sufficient to exercise in personam jurisdiction over the foreign corporation. Similarly, the Court in *Harris v. Arlen Properties, supra,* 256 Md. at 197, found that the activities of an agent of a foreign corporation in seeking land suitable for shopping centers in Maryland constituted "purposeful action" within Maryland and thus amounted to the transaction of business in Maryland.

We believe that the alleged activities of Michael's agents within the State constituted such "purposeful activity" within the State as to be a transaction of business within the meaning of subsection (b) (1). Michael caused his agents in Maryland to commence negotiations in Maryland with Mohamed, who was temporarily residing here, to reach a settlement on the contract dispute. It is alleged that these negotiations were "intensive" and continued even after Mohamed was arrested. The appellee, in his brief, admits that these negotiations continued for a substantial period of time, possibly six weeks. Moreover, it is alleged that the acts of these agents in Maryland caused tortious injury within Maryland.

These alleged activities of the defendant's agents were of sufficient duration and quality so as to satisfy the transaction of business requirement of § 6-103 (b) (1) and the "minimum contacts" requirement of the Fourteenth Amendment's Due Process Clause.

> *Judgment reversed and case remanded for further proceedings not inconsistent with this opinion.*
>
> *Costs to be paid by appellee.*