545 A.2d 111

**Gerald SLEPH, et al.**

v.

**Frederick J. RADTKE, Jr.**

**No. 1536, Sept. Term, 1987.**

Court of Special Appeals of Maryland.

Aug. 5, 1988.

Certiorari Denied Nov. 29, 1988.

**420**

Charles E. Wehland, Ellicott City, and Sharon E. Haynie, Columbia, for appellants.

Lewis G. Wilson, Jr. (Donald P. Mazor, on the brief), Baltimore, for appellee.

Argued Before KARWACKI and ROBERT M. BELL, JJ., and JAMES S. GETTY, Associate Judge of the Court of Special Appeals (retired), Specially Assigned.

KARWACKI, Judge.

Gerald Sleph and Beverly Sleph, his wife, appeal from a deficiency decree entered against them by the Circuit Court for Baltimore City in favor of Frederick J. Radtke, Jr., the appellee. They pose these questions for our review:

1. Did the lower court err when it found that there was sufficient contact with the State of Maryland to establish personal jurisdiction over Gerald and Beverly Sleph under Maryland Courts and Judicial Proceedings Code Annotated § 6–103(b)(1)?

2. Did the lower court err when it found that there had been sufficient notice of foreclosure proceedings to Gerald and Beverly Sleph as required by Maryland Rule W74 a.2.(c)?

## The Facts

The appellants are, and have been during all times material to this controversy, residents of Annandale, Virginia. In June of 1981 they were persuaded by Norris Ashe, trading as Norris Properties, a Washington, D.C. real estate broker, to invest in five commercial properties known as 1404–06–08–10–12 E. Lombard Street in Baltimore City. These storefront properties were in need of extensive restoration before they could be offered for rent. The appellants agreed to join with Ashe, his wife, and two of his associates, Richie Gaylen and Jackie Z. Woolf, in the purchase of the properties from appellee for an aggregate price of $43,000. The purchasers agreed among themselves that appellants would invest $13,000 in cash in the enterprise and that Mr. and Mrs. Ashe, Gaylen, and Woolf would be solely responsible for satisfying the payments on the mortgage securing the balance of the purchase price, in paying the real estate taxes on the properties and bearing the necessary cost of restoring the properties to a condition where they would be income producing. Under the terms of this oral agreement, appellants received a 79% interest in the five properties. Mr. and Mrs. Ashe were given a 7% interest. Mr. Gaylen and Mr. Woolf each received a 7% share.

Pursuant to this arrangement, appellants drew two checks representing their cash investment. Their $2,000.00 check accompanied the contract for the purchase of the properties, which was signed at their Virginia home. It was made payable to Kline Brothers, a listing broker for the sale of the properties. The second check in the amount of $11,000.00 was made payable to the attorney who conducted the settlement on the sale. Appellants did not attend that settlement but delivered their $11,000 check to Norris Properties.

Settlement was held in July of 1981. Deeds conveying the five properties to appellants and their fellow investors in the interests previously recited were executed by appellee. A purchase money mortgage to appellee in the amount of $33,000.00 had been executed by the appellants at their Virginia home prior to settlement. Mr. and Mrs. Ashe, Mr. Gaylen and Mr. Woolf also executed the mortgage as co-mortgagors. The mortgagors covenanted to repay the principal amount of the mortgage debt together with interest in monthly installments over the next eight years. The mortgagors also agreed that upon any default in the required payments, the entire debt would become due and payable to appellee.

Thereafter, appellants visited the properties sporadically and apparently were satisfied that the agreement which they had entered with their co-venturers was being performed. Appellants never inquired as to whether the required mortgage payments were being made, but relied on the promise of their co-investors to do so. On one occasion Mrs. Sleph received a complaint from the City of Baltimore concerning a housing code violation at the properties. She referred that matter to Mr. Ashe, and it was resolved by him.

In "early Fall" of 1984, Mrs. Sleph spoke with Norris Ashe by telephone. She testified:

I spoke with Norris Ashe on the phone, and asked—I finally got him on the phone, and I asked him what was happening. And he said that Lombard Street had gone to foreclosure. And I said, "What happened?" And he started—he said, "I don't know anything about it. It was Jackie Wolf." And I said, "Well, what does that mean? Where does that leave me?" And I said, "Where's Jackie —you know, what's going on?" And he said, "Well, Jackie Wolf's not associated with me anymore. I don't want to hear his name, and I don't have anything to do with him anymore." And I said, "But it was your company that—you know, where are we now? We've lost all this money that we've put into the money." I said,

"What did it sell for?" And he said, "It sold for 31,000." And I said, "What about the other two, because the mortgage is for 33?" And he said to me, "Well, they wanted the property back and they got it, and so why would they bother you for that, you know?" And that was the only time I ever heard the word "foreclosure," in that conversation.

The foreclosure proceedings of which the appellants were apparently unaware were instituted by appellee on October 28, 1983. Appellee's petition for foreclosure of the $33,-000.00 mortgage executed by appellants and their co-investors alleged a default in that mortgage. On the same day appellee filed a statement of mortgage debt which claimed a principal balance on the mortgage debt of $32,695.02 with interest from May 1, 1983. On October 31, 1983, the court ordered a foreclosure sale.

On April 2, 1984, Donald P. Mazor, appellee's attorney and the trustee appointed by the court to conduct the sale, sent a letter jointly addressed to appellants, the Ashes, Gaylen, and Woolf "c/o Banner Realty, 2508 N. Charles Street, Baltimore, Maryland 21218" notifying them of the time, place, and terms of the sale scheduled for April 19, 1984. That letter was sent by certified mail with return receipt requested. In an affidavit of compliance with Rule W74 a.2.(c), the trustee attached a return receipt for that certified mail reflecting that it was received by S. Robinson on April 9, 1984, at the address to which it was sent.

The mortgaged properties were sold at public sale on April 19, 1984, for $31,000.00. The trustee reported the sale to the court on May 7, 1984. Thereafter, the court auditor examined the proceedings and stated his account, which reported that the net proceeds of the foreclosure sale were $15,114.20 less than the mortgage debt and accrued interest due the appellee. That account was finally ratified and confirmed by the court on September 13, 1984.

On October 25, 1984, appellee moved for a deficiency decree against appellants. Process was issued for the

appellants on that motion. When the sheriff filed his return on the summons directed to 2508 N. Charles Street, he noted that when he attempted to serve the appellants at that address, he was informed by one Shirley Robinson that the appellants were unknown at that address. On January 23, 1985, appellee reissued process on the motion. Appellant Beverly Sleph received a copy of the motion and the summons issued by the court thereon by certified mail directed to her home in Virginia on January 31, 1985. Appellant Gerald Sleph was served with the motion and summons by a private process server at his home in Virginia on November 11, 1985.

After her receipt by certified mail of the motion for deficiency decree and summons, appellant Beverly Sleph wrote to the attorney for the appellee on February 16, 1985:

I have received a letter from you regarding a foreclosure filed by Frederick J. Radtke, Jr.

This is the first communication we have ever received regarding any foreclosure. We are unsure as to what has occurred.

Can you advise why this is our first notice and its meaning?

Looking forward to your reply.

Mr. Mazor answered that letter on February 25, 1985. He advised Mrs. Sleph that his client's mortgage on the Lombard Street properties had been foreclosed, and he informed her of the amount of the successful bid at the foreclosure sale and the amount of the deficiency between the mortgage debt due appellee and the net proceeds of the foreclosure sale. His letter continued:

Under the Rules of the State of Maryland, it is necessary that notice of the sale be given to the mortgagors not more than 15 days nor less than 5 days prior to the sale by certified mail. The only address known at that time for you was the office of Jackie Z. Woolf in Baltimore City on North Charles Street and, accordingly, notice of the sale was mailed to that address. I have subsequently learned of your address through an attor-

ney who now represents Mr. and Mrs. Ashe and, accordingly, that is why you are now getting notice of the deficiency. The deficiency amounts to $15,224.20 and will be a judgment against you as entered by the Circuit Court for Baltimore City.

It would be appreciated if you would be kind enough to communicate with me for the purpose of determining when and how these funds will be paid.

On December 24, 1985, when neither appellant opposed appellee's motion for a deficiency decree, the court entered a decree in personam against them in the amount of $15,-224.20. On March 13, 1986, the appellants filed a belated answer to appellee's motion for deficiency decree, and on April 4, 1986, they moved to strike the decree in personam entered against them. Appellants asserted that appellee's attorney had granted their attorney an extension of indeterminate length to reply to appellee's motion for deficiency decree. Appellee did not oppose the motion and the decree was set aside. The court then referred the case to a master for hearing, report and recommendation pursuant to Rule 2–541(c).

At the hearing before the master on June 10, 1986, the foregoing facts were established by the uncontradicted testimony of the only witness, the appellant Beverly Sleph, and documentary evidence. The master recommended that appellee's motion for deficiency decree be denied because of appellee's noncompliance with Rule W74 a.2.(c).

Appellee filed exceptions to the master's recommendation. Those exceptions were sustained by the court after reviewing a transcript of the proceedings before the master and hearing argument of counsel. The court then entered the order from which this appeal has been taken.

### Personal Jurisdiction

The Maryland long-arm statute governs the exercise of personal jurisdiction by Maryland Courts over nonresident defendants. The statute in its entirety provides:

(a) *Condition.*—If jurisdiction over a person is based solely upon this section, he may be sued only on a cause of action arising from any act enumerated in this section.

(b) *In general.*—A court may exercise personal jurisdiction over a person, who directly or by an agent:

(1) Transacts any business or performs any character of work or service in the State;

(2) Contracts to supply goods, food, services, or manufactured products in the State;

(3) Causes tortious injury in the State by an act or omission in the State;

(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;

(5) Has an interest in, uses, or possesses real property in the State; or

(6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

Md.Code (1984 Repl.Vol.), § 6–103 of the Courts and Judicial Proceedings Article.

 The application of this statute requires two interrelated determinations: 1) whether the statute authorizes the exercise of personal jurisdiction under the circumstances of the case; and 2) whether the exercise of personal jurisdiction would be consistent with the Due Process Clause of the Fourteenth Amendment. *Mohamed v. Michael,* 279 Md. 653, 657, 370 A.2d 551 (1977); *Geelhoed v. Jensen,* 277 Md. 220, 224, 352 A.2d 818 (1976). This is so because of the intent of the Legislature in enacting the long-arm statute to expand the exercise of personal jurisdiction to the limits allowed by the Due Process Clause. *Camelback Ski Corp.*

*v. Behning,* 307 Md. 270, 274, 513 A.2d 874 (1986) ("Camelback I"), *vacated and remanded,* — U.S. ——, 107 S.Ct. 1341, 94 L.Ed.2d 512 (1987), *aff'd,* 312 Md. 330, 333, 539 A.2d 1107 (1988) ("Camelback II"); *Mohamed v. Michael, supra,* 279 Md. at 657, 370 A.2d 551.

■ Appellants argue that in executing the purchase money mortgage in favor of appellee under the circumstances of the instant case they did not directly or by an agent transact any business in this State within the meaning of § 6–103(b)(1). We reject that argument as did the trial court and the master.

The fact that appellants executed the mortgage while physically present in Virginia is of no material consequence. *Harris v. Arlen Properties, Inc.,* 256 Md. 185, 198, 260 A.2d 22 (1969). A nonresident who has never entered the State, either personally or through an agent, may be deemed to have "transacted business" in the State within the meaning of subsection (b)(1) as long as his or her actions culminate in "purposeful activity" within the State. *Mohamed v. Michael, supra,* 279 Md. at 659, 370 A.2d 551; *Snyder v. Hampton Industries, Inc.,* 521 F.Supp. 130, 141 (D.Md.1981). The appellants incurred the mortgage debt with appellee for the purpose of acquiring an interest in a speculative investment in commercial real estate located in Maryland. Their activities within this State, before and after the execution of their mortgage, performed directly and through their co-venturers, constituted sufficient purposeful activity to satisfy the statute.

■ The constitutional standards which govern the determination of whether a court's exercise of personal jurisdiction over a nonresident defendant violates the Due Process Clause of the Fourteenth Amendment involve two considerations. The first consideration, announced in *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945),

"... requires only that in order to subject a defendant to a judgment in personam, if he be not present within the

territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' "

The quality and quantity of contacts required to support the exercise of personal jurisdiction will depend upon the nature of the action brought and the nexus of the contacts to the subject matter of the action. *Camelback II, supra,* 312 Md. at 338, 539 A.2d 1107. But in each case, "it is essential . . . that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 1 L.Ed.2d 1283 (1958).

After it has been determined that a defendant has purposefully established minimum contacts within the forum State, the contacts should be considered in light of several enumerated factors which dictate whether the assertion of personal jurisdiction would comport with "fair play and substantial justice." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476–77, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985). The relevant factors include: the burden on the defendant; the interests of the forum State; the plaintiff's interest in obtaining relief; the interstate judicial system's interest in obtaining the most efficient resolution of controversy; and the shared interest of the several states in furthering fundamental substantive social policies. *Id.; Camelback II, supra,* 312 Md. at 342, 539 A.2d 1107.

The requirements of due process are satisfied if the suit is based on a contract which has a substantial connection with the forum State. *McGee v. International Life Ins. Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957). A defendant who has created "continuing obligations" between himself and residents of the forum has "availed himself of the privilege of conducting business there, and because his activities are shielded by 'the benefits and protections' of the forum's laws it is presumptively

not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Burger King Corp. v. Rudzewicz, supra,* 471 U.S. at 476, 105 S.Ct. at 2184, 85 L.Ed.2d at 543. An absence of physical contacts will not defeat the exercise of personal jurisdiction where a commercial actor's efforts have been "purposefully directed" toward residents of another state. *Id.*

We hold that the appellants in the case *sub judice* purposefully established minimum contacts with the State of Maryland by creating a "continuing obligation" between themselves and a Maryland resident which invoked the benefits and protections of Maryland law. As we noted earlier their covenant to repay the mortgage debt enabled appellants to acquire an interest in Maryland real estate and to pursue a speculation in this property within this State.

The broader consideration of essential fairness under all of the circumstances also justifies the exercise of personal jurisdiction by a Maryland court in the instant case. Of the relevant considerations, we deem none more compelling than the interest of this State, as well as the interest of the interstate judicial system, in providing a single forum for the litigation of disputes that arise from interests in land located within the forum. The appellee also has a weighty interest in litigating his claim in a single forum. Because appellee's foreclosure suit, precipitated by appellants' default under the terms of the mortgage, had to originate in the forum in which the mortgaged property was located, a requirement that appellee terminate his action and seek a deficiency judgment in a Virginia forum would result in a tremendous waste of judicial resources and needless confusion. These interests must be balanced with the burden that appellants faced by litigating in a Maryland forum a dispute that arose from their interest in real property located in Maryland. We do not consider this burden unreasonable, because the obligations which appellants voluntarily assumed made it entirely foreseeable that they would be "haled into court" in Maryland. *World–Wide Volkswagen*

*Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). "[T]he Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed." *Burger King v. Rudzewicz, supra*, 471 U.S. at 474, 105 S.Ct. at 2183, 85 L.Ed.2d at 541.

### Notice

Appellants contend that the appellee did not comply with the notice requirements of Rule W74 a.2.(c) prior to the foreclosure sale of the mortgaged properties. During the pendency of the foreclosure proceedings in issue, the rule provided in pertinent part:

(c) By Registered Mail.

Before making a sale of mortgaged property, the person authorized to make the sale shall also send notice of the time, place, and terms of sale by registered mail to the last known address of

(i) the mortgagor;

. . . . .

The notice of the sale shall be sent not earlier than twenty days and not later than five days before the date of sale. The person giving the notice shall file in the proceedings a return receipt or an affidavit that the provisions of this paragraph have been complied with. Where such filing is made before final ratification, failure of the mortgagor to receive the notice shall not invalidate the sale. . . .

Md.Code (1977 Repl.Vol., 1983 Cum.Supp.) Vol. 9C, Rule W74. "Registered mail" was defined to include "certified mail, deposited with the United States Post Office, with postage prepaid, and with a request for a return receipt." Md.Code, *supra*, Vol. 9B, Rule 5 aa.

Prior to the adoption of the original version of this rule by the Court of Appeals in 1969, no one was entitled to personal notice that foreclosure of a mortgage was pending. The only warning of the proceedings to the mortgagors and to everyone else was the publication of advertisements of

the sale. *Gaspin v. Browning,* 265 Md. 552, 554, 290 A.2d 507 (1972). The Rules Committee of the Court of Appeals set forth its rationale in recommending the rule in its 37th Report filed on September 30, 1969:

During the last session of the Legislature several bills were introduced into the House of Delegates (HB. 220, 1354 and 1355) which were designed to provide some direct notice to the mortgagor in the event of mortgage foreclosure. The Rules Committee through its Subcommittee on Liaison with the Legislature was successful in having the bills referred to the Rules Committee for consideration. As a result of a study and report made by its Subcommittee on Special Proceedings the Committee concluded that it was desirable to amend the Foreclosure of Mortgages and Other Security Devices rule (Subtitle W) so as to provide for notice to the mortgagor since it is possible in some cases that an injustice may be done where the published advertisement does not actually come to the attention of the mortgagor and the mortgagor is therefore unable to protect his interest to the extent that would have been possible had he received notice. The issue involves a reconciliation of the interest in fairness to the mortgagor with the interest of expedition in mortgage foreclosures. The latter interest is important in maintaining a healthy money market of willing lenders, which is to the interest of mortgagors as well as mortgagees. *Accordingly the Committee feels that the burden in connection with the notice should be not unduly burdensome. The proposal appended hereto merely imposes an obligation to send by registered mail, which under the Maryland Rules includes certified mail, the notice to the mortgagor's last known address as shown in the mortgagee's file and to file in the proceedings either a return receipt or an affidavit of compliance. The receipt of the notice would not be jurisdictional and the mortgagee would not be required to conduct any kind of search for the mortgagor. Mortgagors would be able to protect themselves by keep-*

*ing the mortgagee current as to their address.* The Committee has been informed that a change in the rules drafted on the foregoing theory would be consistent with the attitude of the Judiciary Committee of the House of Delegates on the matter. (Emphasis supplied.)

Under the undisputed facts before the trial court the appellants entered a joint venture for the restoration of dilapidated commercial real estate with the view to the profits which would flow from that enterprise. *Cf. Herring v. Offutt,* 266 Md. 593, 295 A.2d 876 (1972). Moreover, it was uncontroverted that the appellants delegated all responsibility for satisfying the obligations on their mortgage to appellee to their joint venturers and co-mortgagors. The record reflects that the only address of the appellants known to the appellee was the office occupied by one of the joint venturers and co-mortgagors of appellants, Jackie Z. Woolf. Appellants argue that they "furnished" appellee their home address because it was imprinted on the check they gave to Kline Brothers for the deposit on the contract for the purchase of the Lombard Street properties and on the check they had delivered to the attorney who conducted the settlement. We reject that suggestion since there is no evidence that appellee was made aware of that address by Kline Brothers or by the settlement attorney.

Furthermore, a joint venture is "really in law a partnership for a single transaction or for a limited number of transactions." (Citations omitted.) *Hobdey v. Wilkinson,* 201 Md. 517, 526, 94 A.2d 625 (1953). Thus, notice of the time, place and terms of the foreclosure sale to Jackie Z. Woolf, appellants' joint venturer and co-mortgagor, was notice to them. Md.Code (1985 Repl.Vol.), § 9–304 of the Corporations and Associations Article; *People's Bank of Baltimore v. Keech,* 26 Md. 521, 530 (1867). We hold that appellee complied with Rule W74 a.2.(c).

JUDGMENT AFFIRMED; COSTS TO BE PAID BY THE APPELLANTS.