Michele **PRINCE**, Plaintiff

v.

**ILLIEN ADOPTIONS INTERNATIONAL, LTD., et al., Defendants.**

**Civ. A. No. HAR 92–173.**

United States District Court, D. Maryland.

Oct. 23, 1992.

**1226**

Patti Gilman West and David J. McManus, Smith, Somerville and Case, Baltimore, Md., for plaintiff.

Shirlie N. Lake and Jeffrey A. Sharpe, Eccleston and Wolf, Baltimore, Md., for defendants.

## MEMORANDUM OPINION

HARGROVE, District Judge.

Presently before the Court is a Motion to Dismiss for Lack of Jurisdiction submitted by the Defendants, Illien Adoptions International, LTD., Anna Belle Illien, Ann F. Bell, and Paula Budnitz. The Court has considered said motion, the opposition thereto, and accompanying memoranda and documents. The issues have been fully briefed. No hearing is deemed necessary. Local Rule 105.5.

## FACTS

The Plaintiff, Michele Prince, is resident of the State of Maryland. The Defendant, IAI, is a corporation existing under the laws of the State of Georgia with its principal place of business in the State of Georgia. IAI conducts business on an international level, providing children from Georgia and foreign countries to adoptive parents. Defendants, Anna Belle Illien, Ann F. Bell, and Paula Budnitz are employees of IAI.

The following events lead to Plaintiff's lawsuit. Prince learned of IAI through a newsletter for single adoptive parents, which is distributed in the State of Maryland and has a Maryland mailing address. Shortly thereafter, Ms. Prince contacted IAI and expressed interest in adopting a child with IAI's assistance. IAI promptly forwarded an adoption application packet to Prince. In September 1988, the Plaintiff completed the application and returned it to IAI with an application fee and a statement concerning the type of child she wished to adopt. Plaintiff indicated a desire for a healthy child, but stated that she would accept a child with "certain treatable medical conditions." Prince noted that "we could deal with a child as long as medical

opinion favored a successful outcome." (Complaint No. 8).

During the months that followed, the parties communicated several times. Plaintiff forwarded to IAI an adoption home study report that had been previously prepared in connection with her attempt to adopt a child through a different agency. This report specified a "healthy female Indian infant ..." (Complaint No. 4). Later, in October 1988, IAI contacted the Plaintiff regarding a potential adoptive child, known as Baby Ritu. In November, IAI sent Plaintiff a hand written note and the medical records of Baby Ritu. The medical records contained this notation: "Ears/ Nose/Throat: Normal" (Complaint No. 11). Sometime thereafter, IAI sent the Plaintiff a memorandum and requested an escort fee. On or about July 9, 1989, IAI informed the Plaintiff that Baby Ritu might have a hearing problem.

The parties held approximately two other telephone conversations, in which they discussed Baby Ritu's hearing problem. Plaintiff told IAI that she would consider adopting a hearing impaired child, but not a deaf child. IAI then informed Plaintiff that Baby Ritu required medical treatment for her eyes and heart, but did not mention that Baby Ritu was deaf.

On or about September 15, 1989, an IAI employee signed the "Placement Agreement between the Adoption Agency and the Adoptive Parents, which provided, in pertinent part, that "the written material on this child shared by Illien Adoptions International includes all known medical and social background information." IAI forwarded the Placement Agreement to Ms. Prince. She in turn signed and returned the papers with a placement fee enclosed.

Subsequently, IAI arranged for Baby Ritu's transportation from India to New York, from New York to Georgia and from Georgia to National Airport in Washington, D.C., where Plaintiff took physical custody of the child.

Shortly after taking custody of Baby Ritu, Plaintiff discovered that Baby Ritu was deaf, and that she required heart and eye surgery, for which Prince incurred medical expenses. The child's unexpected medical crises caused Plaintiff great emotional distress. Plaintiff claims that the IAI's failure to inform her of Baby Ritu's health problems resulted in Plaintiff's need for various social services. For example, the Baltimore County General Hospital conducted an emergency evaluation of Prince, which led to her involuntary committal to Sheppard Pratt Hospital for psychiatric treatment. Also, the Maryland Family and Children's Services, assumed temporary responsibility for Ms. Prince's children, because of her inability to care for them.

While in the custody of Maryland Family and Children's Services, Baby Ritu was examined by a physician and diagnosed as being deaf. Baby Ritu was placed with a foster home and subsequently placed with another adoptive family.

The Plaintiff brought suit in this Court, claiming $60,000 in compensatory damages from IAI for medical expenses incurred on behalf of Baby Ritu, and for the Plaintiff's application fee, escort fee, and placement fee. Plaintiff also seeks compensation for her emotional trauma and treatment.

## I

Defendants move to dismiss the Complaint for lack of jurisdiction over the person, pursuant to FED.R.CIV.P. 12(b)(2). The Defendant argues that the Plaintiff's cause of action did not arise from one of the acts enumerated in Maryland's long-arm statute, section 6–103(b) of the Maryland Courts and Judicial Proceedings Code Annotated. This Court disagrees and is satisfied that the requirements of section (b)(1) of the Maryland Long Arm statute (Mds.Cts. & Jud. Proc. Code Ann. § 6–103 (1980) are met.[1]

The Maryland long-arm statute provides as follows,

1. Plaintiff also argues that the long arm statute provides for jurisdiction in this case under § 6–103(b)(3) and (4). As the Court is satisfied that

it retains jurisdiction under subsection (b)(1), subsection (b)(3) and (b)(4) will not be considered.

"(a) Condition—If jurisdiction over a person is based solely upon this section he may be sued only on a cause of action arising from any act enumerated in this section.

(b) In general.—A court may exercise personal jurisdiction over a person, who directly or by an agent:

(1) Transacts any business or performs any character of work or service in the State."

(2) Contracts to supply goods, foods, services, or manufactured products in the State;

(3) Causes tortious injury in the State by an act or omission in the State;

(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured in the State;

(5) Has an interest in, uses, or possesses real property in the State; or

(6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing."

*Id.* Application of the long arm statute is essentially a two step process. First, the court determines whether a particular subsection authorizes service of process on the non-resident. If service of process is authorized, the Court then determines whether that service, and the attendant exercise of personal jurisdiction, comports with due process. *See, Snyder v. Hampton Industries, Inc.,* 521 F.Supp. 130 (D.Md.1981), *quoting, Craig v. General Finance Corp. of Illinois,* 504 F.Supp. 1033, 1036 (D.Md. 1980).

This Court is bound by the decisions of the Court of Appeals of Maryland as to whether a particular subsection of the long-arm statute will reach certain conduct. However, Federal law determines whether the exercise of personal jurisdiction violates due process. *McLaughlin v. Copeland,* 435 F.Supp. 513, 522 (D.Md.1977).

## II

The Defendants argue that they did not transact business in the State of Maryland within the meaning of section (b)(1), and maintain that the exercise of personal jurisdiction over the defendants by this Court would violate the Due Process Clause of the Fourteenth Amendment. For the following reasons the Court rejects the Defendants' arguments.

### Subsection (b)(1)

██ Defendants note that they performed all work and services solely in Georgia. Defendants transported Baby Ritu into the District of Columbia, and not into Maryland. Indeed, the Defendants never set foot in Maryland, with respect to the adoption of Baby Ritu. However, this is irrelevant to the matter presently before the Court. A nonresident who has never entered the State, either personally or through an agent, may be deemed to have "transacted business" in the State within the meaning of subsection (b)(1) if its actions culminate in "purposeful activity" within the State. *Sleph v. Radtke,* 76 Md. App. 418, 545 A.2d 111 (1988).

Defendants contend that its contacts with Maryland were too limited to constitute the "transaction of business." IAI communicated with the Plaintiff solely by way of telephone or written correspondence initiated by IAI in Georgia. IAI is not a corporation qualified to do business in the State of Maryland, and has not purposefully availed itself of the privileges that any company transacting business in the Maryland would be afforded. Defendants assert that Georgia has the most substantial connection regarding the alleged acts or omissions of the Defendants. For the reasons discussed below, the Court is unpersuaded by Defendants' arguments.

The courts have made a distinction between "doing business" and "transacting business," and have held that because of the underlying purposes of the long arm statute and the language of subsection of (b)(1), "significantly fewer contacts are

needed to constitute "transacting business" than are required to permit the exercise of personal jurisdiction under the old "doing business" test." *Snyder*, 521 F.Supp. at 137.

In deciding whether the requirements of section 6–103(b)(1) are met, the Court must determine whether Defendant's actions culminate in "purposeful activity" within the State of Maryland. *Sleph*, 76 Md.App. 418, 545 A.2d 111.

■ Courts have extended jurisdiction over defendants in situations similar to the matter at bar. In *Sleph*, 76 Md.App. 418, 545 A.2d 111, the court held that a nonresident defendant who executed a purchase money mortgage on Maryland property in favor of a Maryland mortgagee as part of investment were subject to long-arm jurisdiction under subsection (b)(1) in a deficiency action. The court in *Snyder*, 521 F.Supp. 130, extended jurisdiction over a North Carolina corporation alleged to have breached a contract made with a Maryland citizen. The defendant was not licensed to do business in Maryland, had no assets or accounts in Maryland, and never had a office, place of business, or telephone listing in Maryland. All meetings between the Defendant and the Plaintiff were held outside of Maryland.

Like the defendants in *Snyder* and *Sleph*, IAI entered a contract with a Maryland resident. The contract resulted in large part from IAI's solicitation of business in the State of Maryland. Plaintiff learned of IAI through its advertisement in a Maryland based newsletter which is circulated in the State of Maryland. At Plaintiff's request, the Defendant mailed its brochure to Plaintiff in the State of Maryland. IAI also mailed a Placement Agreement to Prince in the State of Maryland. Prince signed the Placement Agreement in the State of Maryland, and forwarded the document to IAI. The agreement provided a supervisory period in which IAI maintained legal custody of Baby Ritu until the adoption was finalized. According to the terms of the agreement, during the supervisory period IAI could terminate placement if the best interests of Baby Ritu child were not

being served, and Prince could request removal of Baby Ritu from her home in the case of unforeseen circumstances. Clearly, the agreement created a continuous relationship between Prince and IAI during the supervisory period. In light of these facts, the Court concludes that IAI transacted business within the meaning of subsection (b)(1) in the State of Maryland.

■ Moreover, the courts have held that Maryland's long-arm statute is coextensive with Due Process. Generally, federal courts have analyzed "transacting business" cases under the Due Process Clause standards developed by the Supreme Court. *See, e.g., McLaughlin v. Copeland*, 435 F.Supp. 513, 523 (D.Md. 1977); *Bennett v. Computers Intercontinental, Inc.*, 372 F.Supp. 1082, 1085 (D.Md. 1974); *Malinow v. Eberly*, 322 F.Supp. 594, 598 (D.Md.1971). For the reasons discussed below, the Court is persuaded that the exercise of jurisdiction over the Defendant comports with Due Process.

### Due Process

In analyzing the Due Process requirements necessary to achieve jurisdiction over a nonresident defendant, two factors must be considered. First, the court must determine if the defendant has the requisite amount of minimum contacts with the forum state. Second, the court must consider if the exercise of jurisdiction would be consistent with traditional notions of fair play and substantial justice *International Shoe v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

The "minimum contact" inquiry focuses on "the relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). A single transaction is sufficient to satisfy the Due Process standard if, as in the present matter, the transaction gives rise to the liability asserted in the suit. *McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).

The Due Process standard only requires that,

there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws.

*International Shoe Co.* 326 U.S. at 316, 66 S.Ct. at 158.

IAI purposefully solicited business in the State of Maryland, and entered into a contract creating a "continuing obligation" with a Maryland resident. *See Sleph*, 76 Md.App. 418, 545 A.2d 111, *Hardy v. Pioneer Parachute Co.*, 531 F.2d 193, 195 (4th Cir.1976). IAI derived economic benefit as a result of IAI's contact with the Plaintiff, a Maryland resident.

Furthermore, IAI placed Baby Ritu in Maryland under an Interstate Compact between Maryland and Georgia which regulates interstate child placement. The Interstate Compact on the Placement of Children, codified in the Maryland Family Law Article § 5–601 et seq., is "entered into by the forum state and all states legally joining in the compact ..." *Id.* at § 5–601. The Compact states in § 5–604(a):

"No sending agency shall send, bring, or cause to be sent or brought into any other state any child for placement in foster care or as a preliminary to a possible adoption unless the sending agency shall comply with each and every requirement set forth in this section and with the applicable laws of the receiving state governing the placement of children therein."

A sending agency includes any "entity which sends, brings or causes to be sent or brought any child to another party state." *Id.*, at § 5–603(2). Section 5–605 provides that a violation of the terms of the Compact may be punished or subjected to penalty in either jurisdiction in accordance with its laws.

The legislative history of the Interstate Compact reveals that its purpose is to provide adoptive parents with information about the child and the child's background. *Id.*, at § 5–303(b)(3)(i). As a result of its activities, IAI became party to the Interstate Compact, which it is accused of violating.

IAI also entered into an agreement with the Family and Children's Services of Central Maryland on September 15, 1989, authorizing Family & Children Services to provide adoptive supervision for the child until the legal adoption took place and to send quarterly reports to IAI concerning the child's welfare. IAI agreed to accept the child back for future care if removal of the child was necessary and to pay expenses incurred by Family & Children's Services in caring for the child.

IAI utilized the procedures of The Interstate Compact on the Placement of Children to conduct business in Maryland, thereby benefitting from its laws. In so doing, IAI purposefully availed itself of the laws of the State of Maryland.

To determine whether jurisdiction over IAI complies with the notions of fair play and substantial justice, the court must consider the burden on the defendant, the interests of the forum state, the plaintiff's interest in obtaining relief, the interstate judicial system's interest in obtaining the most efficient resolution of the controversy, and the shared interest of the several states in furthering fundamental substantive social policies. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

The burden on Illien in litigating this case in Maryland is minimal. IAI, a Georgia corporation, has no great distance to travel in order to defend itself in the State of Maryland. IAI's defense would be based largely on documents and records located in Georgia which can be transported easily to Maryland. By contrast, Prince's many witnesses, including physicians and relatives, are located in Maryland. Plaintiff would no doubt incur great trouble and expense in bringing her witnesses to Georgia. As a result, Maryland is the most convenient forum for this case.

Furthermore, the State of Maryland has a significant interest in this litigation. There is a recognized interest of a state in protecting its residents from harm, especially where a tortious injury, as opposed to an economic injury, forces the state to sup-

port injured citizens. *Copiers Typewriters Calculators, Inc. v. Toshiba Corp.,* 576 F.Supp. 312, 321 (D.Md.1983). The State of Maryland has shouldered a significant portion of responsibility for Ms. Prince and her children, allegedly as a result of IAI's tortious conduct.

Requiring IAI to defend a lawsuit in Maryland based on Plaintiff's claim, which is directly related to its contract with a Maryland citizen, would not offend the Due Process Clause. IAI's "conduct and connection with this forum State are such that [it] should reasonably anticipate being haled into court" in Maryland. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

### III

For the above stated reasons, Defendants' Motion to Dismiss for Lack of Jurisdiction is denied.

It will be so ordered.