617 A.2d 1125

**JASON PHARMACEUTICALS, INC.**

v.

**JIANAS BROTHERS PACKAGING CO., INC.**

**No. 383, Sept. Term, 1992.**

Court of Special Appeals of Maryland.

Jan. 7, 1993.

**426**

John H. Zink, III (Mary–Dulany James and Venable, Baetjer and Howard, on the brief), Towson, for appellant.

E. David Hoskins (James E. Gray and Goodell, DeVries, Leech & Gray, on the brief), Baltimore, for appellee.

Argued Before ROSALYN B. BELL, FISCHER and HARRELL, JJ.

ROSALYN B. BELL, Judge.

On April 30, 1991, appellant, Jason Pharmaceuticals, Inc. (Jason), a Maryland corporation, filed suit in the Circuit Court for Baltimore County against appellee, Jianas Brothers Packaging Co., Inc. (Jianas), a Missouri corporation, alleging breach of contract and negligent misrepresentation. After an evidentiary hearing on January 24, 1992, the trial court granted Jianas's motion to dismiss for lack of personal jurisdiction. On appeal, Jason contends that the trial court erred in finding that Maryland has no personal jurisdiction over Jianas. We agree with Jason that Jianas is subject to personal jurisdiction in Maryland and reverse.

## THE FACTS

The contract underlying Jason's suit was for the sale of two packaging machines by Jason to Jianas. Steve Jianas, vice president of Jianas, signed a proposal, written by Jason, to purchase the machines. R.A. Jones & Co., Inc., a third party, was to test the machines and sign as a warrantor if the machines passed the test. The proposal included a sale price of $700,000, and a $35,000 down payment, which was to be "promptly refunded in full if the testing of the machines is unsuccessful." Jianas sent the $35,000 to Jason in Maryland, and when Jianas claimed that the testing was unsuccessful and refused to go through with the deal, Jason brought the suit for breach of contract and negligent misrepresentation.

Jianas first learned that the machines were for sale when Mr. Jianas met representatives of R.A. Jones at a trade show in Chicago. One of those representatives gave Mr. Jianas a brochure containing a description of the machines, and a telephone number for Jason in Maryland.

After receiving the brochure, Mr. Jianas testified at the evidentiary hearing that "I think it was the next week or so, whenever I returned home, I called Jason Pharmaceuticals [1] and contacted Jim Janson." Mr. Janson is a project engineer at Jason who was involved in selling the machines. Between November of 1990 and January of 1991, the parties engaged in extensive negotiations concerning various terms of the sale, including price. Over 40 phone calls were made, and at least half of the calls were made by Jianas in Missouri to Jason in Maryland.

After negotiations broke down, Susan Boone, the chief operating officer at Jason, stepped in, and Mr. Jianas signed the proposal on January 25, 1991. The proposal stated that "Jianas will indicate its acceptance of this offer by countersigning one of the enclosed copies of this letter and returning it to Jason." Mr. Jianas signed the letter and sent it to Jason in Maryland along with a check for $35,000 [2], which Jason deposited in a Maryland bank. The machines were stored in Ohio. Tests were performed on a prototype machine located at R.A. Jones's plant in Kentucky. Jianas alleged that the tests were unsuccessful. R.A. Jones refused to sign the warranty as it appeared in the proposal, but signed a modification of the warranty on February 27, 1991.

---

1. Jianas, in its brief and at oral argument, made statements concerning whether Jianas initiated negotiations, which, at best could be called "equivocal." These statements were obvious misrepresentations that Jianas did not contact Jason first, when Mr. Jianas himself testified that he first contacted Jason.

 There was no evidence suggesting that Jason first contacted Jianas, other than Jianas's contention that the brochure prepared by Jason and given to Mr. Jianas in Chicago constituted a first "solicitation." The trial judge did not make a finding as to which party made the initial contact, but it would seem that the phone call from Mr. Jianas to Mr. Janson was the initial direct contact.

2. The $35,000 deposit had not been returned as of the date of oral argument. When asked at oral argument how Jianas would go about obtaining return of those funds, counsel stated that Jianas could sue Jason in Missouri. It is interesting to note that Jianas believes Jason would be subject to suit in Missouri, a jurisdiction where Jason had less contacts than Jianas had with Maryland.

## PERSONAL JURISDICTION
### —The Long Arm Statute—

Appellant contends that the circuit court erred in finding that there was no personal jurisdiction over appellee. We agree and reverse the decision of the circuit court.

 General jurisdiction exists where a party has been "doing business" generally in the forum state, but the cause of action is not related to those contacts. *Camelback Ski Corp. v. Behning*, 312 Md. 330, 338, 539 A.2d 1107, *cert. denied*, 488 U.S. 849, 109 S.Ct. 130, 102 L.Ed.2d 103 (1988). Specific jurisdiction exists where the cause of action arises out of a party's contacts with the forum state. *Camelback*, 312 Md. at 338, 539 A.2d 1107. This case involves specific jurisdiction arising out of a contractual dispute.

 The Maryland Long Arm Statute, Md.Cts. & Jud. Proc.Code Ann. § 6–103 (1974, 1989 Repl.Vol.), provides, in pertinent part:

"**(b) In general.**—A court may exercise personal jurisdiction over a person, who directly or by an agent:

"(1) Transacts any business or performs any character of work or service in the State; [or]

\* \* \* \* \* \*

"(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State."

Once personal jurisdiction is established under the long arm statute, the court must then determine whether the exercise of personal jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment. *Mohamed v. Michael*, 279 Md. 653, 657, 370 A.2d 551 (1977).

 To establish personal jurisdiction under § 6–103(b)(1), appellant has the burden of showing that appellee

transacted business in Maryland. *McKown v. Criser's Sales & Service,* 48 Md.App. 739, 747, 430 A.2d 91, *cert. denied,* 290 Md. 718 (1981). The phrase "transacting any business" has been the subject of Maryland cases, but none of those cases share the same factual circumstances as the instant case. *See Mohamed,* 279 Md. at 658–59, 370 A.2d 551 (weeks of negotiating in Maryland to settle a contractual dispute held transacting business); *Harris v. Arlen Properties, Inc.,* 256 Md. 185, 196–97, 260 A.2d 22 (1969) (where developer of shopping center who visited Maryland four times to view a potential site for shopping center and filed for a building permit in Maryland, the Court had "no difficulty in determining that these actions were purposeful actions which constituted 'transacting of business' "); *Novack v. National Hot Rod Ass'n,* 247 Md. 350, 357, 231 A.2d 22 (1967) (inspecting and certifying a racetrack in Maryland is transacting business); *Van Wagenberg v. Van Wagenberg,* 241 Md. 154, 166–67, 215 A.2d 812 *cert. denied,* 385 U.S. 833, 87 S.Ct. 73, 17 L.Ed.2d 68 (1966) (settlement agreement requiring husband to make continuing payments in New York on behalf of his ex-wife and their child held to be transacting business within the meaning of the New York long arm statute because contract was formed in New York and payments were to be made in New York); *Sleph v. Radtke,* 76 Md.App. 418, 427, 545 A.2d 111, *cert. denied,* 314 Md. 193, 550 A.2d 381 (1988) (residents of Virginia who executed mortgage for property located in Maryland held to have transacted business).

Appellee argues that it did not transact business in Maryland and that "the instant case involves an unsuccessful [3] effort to enter into a one-time sales transaction." Likewise, the trial court, in granting the motion to dismiss, was under the impression that, where a one-transaction contract is

---

**3.** Whether a contract existed between appellant and appellee goes to the merits of the case and is irrelevant to the issue of personal jurisdiction raised in the motion to dismiss. Likewise, we are not called upon to decide whether the testing of the machines was successful.

involved, there can be no assertion of personal jurisdiction: "on a one contract deal, the fact that there are phone calls and the fact that there is mail between the States, that isn't going to do it ... because I don't think that is the law." The trial judge then asked, "Well, in that case then, anybody who makes a contract with a Maryland business or person or corporation is automatically going to be sued in Maryland?"

The trial judge, at the evidentiary hearing, asked appellant's attorney, "Now, why in the world would that scenario of facts in any way ever suggest to [appellee] that [it was] utilizing Maryland and [was] subject to Maryland jurisdiction?" The trial court further stated that "those transactions, alone, of using the phone, standing alone, and mailing a check, is insufficient evidence of transacting business in this state also."

We believe the trial court erred in deciding that, under the facts and circumstances in the instant case, a one-transaction contract with a Maryland corporation is not transacting business within the meaning of § 6–103(b)(1). Therefore, we need not consider appellant's alternative contention that there is personal jurisdiction over appellee in Maryland under § 6–103(b)(4).[4]

The trial court also concluded that the contract was formed in Missouri and was persuaded that this was an important factor weighing against the exercise of personal jurisdiction over appellee: "Well, as far as [appellee was]

---

4. Section 6–103(b)(4) requires that appellant show that appellee was doing business in Maryland, or derived substantial revenues from sales in Maryland. We note, without deciding the issue, that evidence adduced at the hearing in the form of invoices suggests that appellee supplied services to the following Maryland businesses: in 1987—1989, appellee did several thousands of dollars of business with the Benn–Kel Co.; in 1987—1991, appellee sold $8,000 worth of oral rehydration salts to a number of Maryland hospitals; 1987–1991, appellee shipped over $20,000 worth of goods it had packaged into Maryland for the Campbell's Soup Co.; and in 1990–1991, appellee did approximately $8,000 in business with McCormick & Co., Inc. of Maryland.

concerned, the contract was negotiated in Missouri.... Well, they never left Missouri. Everything they did was in Missouri...."

■ The trial court arrived at this conclusion without interpreting the acceptance term in the proposal which stated that acceptance was to be made by signing the proposal "and returning it to [appellant]." The parties have cited us to no cases interpreting this particular language as it relates to whether a contract is formed in the state of the one who returns it or the state of the one who receives it, and our own research has not shed any light on this matter. Since this language was not addressed in the briefs or considered by the trial court, we view the conclusion of the trial judge on where the contract was formed far from controlling in the determination of personal jurisdiction. Certainly, there is sufficient evidence indicating that appellee was transacting business within the meaning of § 6–103(b)(1).

In determining whether a party has transacted business, this Court has stated:

"A nonresident who has never entered the State ... may be deemed to have 'transacted business' in the State within the meaning of subsection (b)(1) as long as his or her actions culminate in 'purposeful activity' within the State."

*Sleph,* 76 Md.App. at 427, 545 A.2d 111. In addition:

"An absence of physical contacts will not defeat the exercise of personal jurisdiction where a commercial actor's efforts have been 'purposefully directed' toward residents of another state." (Citation omitted.)

*Sleph,* 76 Md.App. at 429, 545 A.2d 111.

In the instant case, there was sufficient evidence of "purposeful activity" on the part of appellee. Appellee initiated the negotiations over the sale by calling appellant in Maryland and expressing its interest in appellant's machines; engaged in several weeks of negotiations with appellant, which was at all pertinent times located in Mary-

land; entered into a $700,000 contract, whether valid or invalid, with appellant in Maryland; and sent a down payment of $35,000 into Maryland. We hold that this is sufficient evidence of purposeful activity to constitute transacting business within the meaning of § 6–103(b)(1).

### —The Due Process Clause—

■ Once a basis for personal jurisdiction has been established under the long arm statute, the court must then decide whether exercise of personal jurisdiction comports with the requirements of the Due Process Clause of the Fourteenth Amendment. Appellee argues that the exercise of jurisdiction violates due process. The Supreme Court, however, has stated:

> "[D]ue process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " (Citation omitted.)

*International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). In *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958), the Court added that the party must have purposefully availed itself of the benefits and protections of the forum in order to permit the exercise of personal jurisdiction. It is fair to subject appellee to defending a suit in Maryland. Appellee initiated contact with appellant in Maryland, conducted extensive negotiations over several weeks for $700,000 worth of machinery, and sent a check to Maryland for $35,000. It should come as no surprise to appellee that it would be expected to come to Maryland to defend this suit.

■ The long arm statute was enacted to "expand jurisdiction to the limits permitted by due process." *Geelhoed v. Jensen,* 277 Md. 220, 226, 352 A.2d 818 (1976). The same contacts that provided a basis for jurisdiction under

the long arm statute may be applied to the due process analysis. *Mohamed*, 279 Md. at 658–59, 370 A.2d 551.

In *McGee v. International Life Insurance Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957), the Supreme Court held that International, a Texas corporation, had sufficient contacts with California such that the exercise of jurisdiction would not offend due process. The extent of International's contacts with California was the issuing of a single life insurance policy to a California resident. *McGee*, 355 U.S. at 223, 78 S.Ct. at 201. The cause of action arose out of that contact, so specific jurisdiction in *McGee*, as in the instant case, was at issue. The Maryland Court of Appeals said of *McGee:*

> "[T]he [Supreme] Court held that even a single transaction in the forum may be sufficient for the exercise of jurisdiction, in a suit based on that transaction, where the transaction had 'substantial connection with that state.'"

*Geelhoed*, 277 Md. at 228, 352 A.2d 818, quoting *McGee*, 355 U.S. at 223, 78 S.Ct. at 201.

In the instant case, as in *McGee*, personal jurisdiction is founded upon a single contact—a contract. Appellee's purposeful activity of initiating contact with appellant in Maryland, negotiating with a Maryland corporation for several weeks, entering into a proposal or contract worth $700,000, and sending a $35,000 check into Maryland meets the requirements of due process expressed in *International Shoe*, as well as the requirements of the long arm statute. Moreover, subjecting appellee to defending a suit in Maryland does not offend "traditional notions of fair play and substantial justice," especially in light of the advancements in the areas of communications and transportation. In addition, since appellee would have no difficulty with the idea of subjecting appellant to suit in Missouri, we have no difficulty in holding that appellee is subject to suit in Maryland.

Accordingly, personal jurisdiction is authorized by § 6–103(b)(1) and does not violate the Due Process Clause of the

Fourteenth Amendment. The motion to dismiss should have been denied.

JUDGMENT REVERSED.

CASE REMANDED FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THIS OPINION.

COSTS TO BE PAID BY APPELLEE.