**NUEVA ENGINEERING, INC.**

**v.**

**ACCURATE ELECTRONICS, INC.**

**Civ. No. Y–85–3939.**

United States District Court,
D. Maryland.

Feb. 25, 1986.

Cornelius J. Carmody, Baltimore, Md., for plaintiff.

E. Nicholson Gault, Jr., Baltimore, Md., for defendant.

**MEMORANDUM**

JOSEPH H. YOUNG, District Judge.

Plaintiff Nueva Engineering, Inc., ("Nueva"), a Maryland corporation, brought this

action in the Federal District Court for the District of Maryland against defendant Accurate Electronics, Inc., ("Accurate"), a Connecticut corporation, alleging that Accurate failed to meet its contractual obligation to pay $113,018.97 for printed electronic circuit boards that it received from Nueva. Accurate moved to dismiss for lack of personal jurisdiction. The Court held an evidentiary hearing on the motion January 27, and finds that it has jurisdiction over the defendant.

Defendant was served at its principal place of business in Bridgeport, Connecticut, pursuant to Fed.R.Civ.P. 4(e) and the Maryland long-arm statute, Md.Code, Courts and Judicial Proceedings, § 6–103. Maryland's long-arm statute extends jurisdiction over nonresident defendants to the limits permitted by due process under the Federal Constitution. *Curtis v. State*, 284 Md. 132, 395 A.2d 464 (1978); *Geelhoed v. Jensen*, 277 Md. 220, 352 A.2d 818 (1976). Therefore the only issue before the Court is whether jurisdiction over the defendant in this case would violate the due process clause. *Geelhoed v. Jensen*, 277 Md. at 226, 352 A.2d 818. *Piracci v. New York City Employees Retirement System*, 321 F.Supp. 1067, 1070 (D.Md.1971).

This is a case where the Court is asserting "specific jurisdiction," because the cause of action arises out of the defendant's contacts with the forum state. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). " 'Specific' jurisdiction contrasts with 'general' jurisdiction, pursuant to which 'a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum.' " *Burger King Corp. v. Rudzewicz*, ─── U.S. ───, ─── n. 15, 105 S.Ct. 2174, 2182 n. 15, 85 L.Ed.2d 528 (1985), *quoting Helicopteros, supra*, 466 U.S. at 414 n. 9, 104 S.Ct. at 1872 n. 9.

The basic due process test for specific jurisdiction remains that set out by the Supreme Court in *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945):

due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."

■ That seemingly flexible standard is subject to two restrictive glosses. The foreseeability of causing injury in another state through a course of action does not establish jurisdiction—"the foreseeability that is critical to due process analysis ... is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). And

> The unilateral actitity of those who claim some relationship with a nonresident defendant cannot satisfy the requirements of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

*Burger King Corp. v. Rudzewicz*, ─── U.S. ───, ───, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985), *quoting Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958).

The question of whether a nonresident corporate defendant's contractual dealings with a resident plaintiff are purposeful enough so that the defendant should foresee being haled into the plaintiff's forum "has deeply divided the federal and state courts." *Lakeside Bridge & Steel Co. v. Mountain State Construction Co., Inc.*, 445 U.S. 907, 909, 100 S.Ct. 1087, 1089, 63 L.Ed.2d 325 (1980) (White, J., dissenting from denial of certiorari). It is easy to see why. Entering into a contract is always "purposeful" in some way, and commercial

transactions with a forum plaintiff always implicate the benefits and protections of the forum's laws to some extent. On the other hand, a *per se* rule that contracts create jurisdiction might engender serious inequities in some cases.

■ So the courts have considered various factors in the contract situation, including whether the parties contemplated that the work would be performed, where negotiations were conducted, where payment was made, etc. The strongest factor that seems to have emerged, however, is a determination of whether the defendant initiated the business relationship in some way. *See, e.g., Bond Leather Co., Inc. v. Q.T. Shoe Mfg. Co., Inc.,* 764 F.2d 928 (1st Cir. 1985); *Patterson v. Dietze, Inc.,* 764 F.2d 1145 (5th Cir.1985); *Madison Consulting Group v. State of South Carolina,* 752 F.2d 1193 (7th Cir.1985); *Reiman v. First Union Real Estate Equity and Mortgage Investments,* 614 F.Supp. 255 (D.D.C.1985).

The Fourth Circuit has generally found jurisdiction in contract cases. *See, e.g., August v. HBA Life Insurance Co.,* 734 F.2d 168 (4th Cir.1984); *Columbia Briargate Co. v. First National Bank in Dallas,* 713 F.2d 1052 (4th Cir.1983), *cert. denied sub nom., Pearson v. Columbia Briargate Co.,* 465 U.S. 1007, 104 S.Ct. 1001, 79 L.Ed.2d 233 (1984); *Vishay Intertechnology, Inc. v. Delta International Corp.,* 696 F.2d 1062 (4th Cir.1982); *Du-Al Corp. v. Rudolph Beaver, Inc.,* 540 F.2d 1230 (4th Cir.1976); *Ajax Realty Corp. v. J.F. Zook, Inc.,* 493 F.2d 818 (4th Cir.1972), *cert. denied sub nom., Durell Products, Inc. v. Ajax Realty Corp.,* 411 U.S. 966, 93 S.Ct. 2148, 36 L.Ed.2d 687 (1973). The Fourth Circuit also seems to have adopted the determination of whether the defendant initiated the business relationship in some way as a dispositive factor in *August v. HBA Life Insurance Co., supra,* and *Vishay Intertechnology, Inc. v. Delta International Corp., supra,* 696 F.2d at 1068 n. 4.

Justice Brennan's opinion for the majority in *Burger King Corp. v. Rudzewicz, supra,* the most recent Supreme Court pronouncement on jurisdiction, favored the Fourth Circuit's approach in contract cases. Although Justice Brennan reiterated the requirement of some purposeful action by the defendant as a prerequisite to jurisdiction, —— U.S. at ——, 105 S.Ct. at 2183, and held that the existence of a contract *alone* was not enough to establish minimum contacts, —— U.S. at ——, 105 S.Ct. at 2184, the opinion noted that it only took one purposeful action by the defendant to establish jurisdiction under certain circumstances, and that the actual physical presence of the defendant in the forum was not required. Justice Brennan also wrote:

> courts in "appropriate cases[s]" may evaluate "the burden on the defendant," the "forum State's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and the "shared interest of the several States in furthering fundamental social policies." *World-Wide Volkswagen Corp. v. Woodson, supra* [444 U.S. 286], at 292 [100 S.Ct. 559 at 564, 62 L.Ed.2d 490 (1980)]. *These considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required.*

—— U.S. at —— ——, 105 S.Ct. at 2184 (citations omitted, emphasis added).

At the evidentiary hearing on the motion to dismiss there was very little conflict in the testimony, which established that defendant Accurate was an assembly manufacturer of electronic products with a need for printed circuit boards manufactured to its specifications. Accurate's principal place of business was in Bridgeport, Connecticut, and Accurate had no other contacts with Maryland besides its relationship with Nueva. In 1982, Robert Tarantino, a manufacturer's sales representative for Nueva, initiated the relationship between the parties by soliciting orders from Accurate at Accurate's place of business in Bridgeport. Accurate began to order print-

ed circuit boards from Nueva, ordering over $100,000 worth in 1982 and approximately $175,000 worth, or more, in 1983. The volume of these orders made Accurate a crucial customer for Nueva.

In early 1984, the President of Accurate, Sherwood P. Judson, became concerned over the quality of circuit boards he was receiving from Nueva. When he expressed those concerns to Nueva, Nueva sent a quality control representative to Connecticut to speak with Judson. Judson had plans to expand his business, and he had concerns about the leadership of Nueva and Nueva's ability to expand with him. Nueva invited Judson to Baltimore to view the site of their new manufacturing plant, to meet the President of Nueva, James P. Piedrafite, and its Vice-President for Sales, Ms. Francis T. Fox. Judson visited Baltimore for a day in February or March, 1984, and toured Nueva's new manufacturing site. Judson discussed his quality control concerns and his desires to have Nueva expand to fill a projected increase in Accurate's orders. Nueva representatives explained their plans for expansion and assured Judson that they could handle his orders.

Judson made two more visits to Maryland in 1984. He spent a weekend at Piedrafite's house on Gibson Island with Piedrafite and Ms. Fox during the summer. The weekend was essentially a social visit with an underlying business purpose, and business was discussed. In October, Judson drove to Maryland for the Grand Opening of Nueva's new plant in Baltimore. Judson stayed a few hours and toured the completed facility.

Judson did not place any orders on his visits to Maryland—orders were placed through Accurate's purchasing department. The business relationship between the parties did not change in any noticeable way after Judson's visits. The complaint alleged that the contract between the parties called for delivery of the circuit boards F.O.B. Nueva's plant in Baltimore. Defendant Accurate, the moving party in the proceedings, did not offer any evidence to counter that allegation. There was clear and convincing testimony from Ms. Fox, Vice-President of Sales for Nueva, that the relationship between circuit board manufacturers and the assembly manufacturers they supply is a heavily interdependent one, which she likened to a "marriage."

■ From these facts, the Court finds that Accurate engaged in purposeful conduct that should have led it to foresee that it could be haled into the courts of Maryland. Accurate took delivery and possession of the circuit boards F.O.B. Nueva's Maryland plant, and the contract clearly contemplated that Nueva would perform in Maryland. *Du-Al Corp. v. Rudolph Beaver, Inc.,* 540 F.2d 1230, 1233 (4th Cir.1976). Although Accurate did not initiate its business relationship with Nueva, Accurate's President, Sherwood P. Judson, took steps preparatory to initiating a new phase of that relationship. His first visit to Baltimore was purposefully designed to determine whether Nueva could meet his plans for expansion.

Judson's initiation of a contemplated change in the business relationship between Nueva and Accurate was certainly greater than the solicitation which the Fourth Circuit found dispositive in *August v. HBA Life Insurance Co.,* 734 F.2d 168 (4th Cir.1984). In that case, the plaintiffs had bought a medical insurance policy from an Arizona corporation while Arizona residents. The plaintiffs moved to Virginia and continued to pay the premiums. They filed a claim that the Arizona corporation disallowed. The Arizona corporation then mailed a request to plaintiffs that they sign a rider which would reduce the coverage of the policy to preclude all claims like the one the plaintiffs had previously filed. The rider would have changed the actual terms of the policy. There was no evidence that the defendant had any other contacts with Virginia. The Fourth Circuit held that the request of the plaintiffs to sign the rider constituted a "solicitation" that was sufficient to subject the defendant to the jurisdiction of the Virginia courts.

There was also convincing evidence that the relationship between the parties was a special, heavily interdependent one. In *Burger King*, the Supreme Court held that the special, interdependent relationship between an individual franchise and the national Burger King organization gave rise to jurisdiction in the national organization's forum. *See also Dynamic Concepts, Inc. v. Modern Chain Co., Inc.*, 610 F.Supp. 285 (D.R.I.1985) (jurisdiction over non-resident defendant proper where defendant had entered into special relationship with plaintiff to have plaintiff exclusively represent defendant's line of gold jewelry chain products to the catalog showroom industry).

Finally, consideration of the additional factors listed in the *Burger King* opinion, —— U.S. at ——, 105 S.Ct. at 2183, also supports the assertion of jurisdiction in this case. Accurate did not introduce a scintilla of evidence that defending this suit in Maryland will impose a special hardship upon it. The Court takes judicial notice of the fact that Connecticut and Maryland are not very far apart in the modern world. Maryland has a significant interest in providing its citizens with "convenient and effective relief" when out-of-state debtors do not pay their debts. And the interstate judicial system's interest in obtaining the most efficient resolution of controversies militates against requiring plaintiff to file its suit all over again in Connecticut, or having this Court transfer venue, especially when defendant has made no showing of hardship.

Accordingly, defendant's motion to dismiss for lack of personal jurisdiction must be Denied.