**POTOMAC DESIGN, INC.**

v.

**EUROCAL TRADING, INC., d/b/a
Eurocal Slate Centers.**

**Civ. No. K–93–63.**

United States District Court,
D. Maryland.

Dec. 9, 1993.

Richard E. Schimel, Budow and Noble, Bethesda, MD, for plaintiff.

Michael McGowan, and John B. Kaiser, Landover, MD, for defendant.

. FRANK A. KAUFMAN, Senior District Judge.

In May of 1987, Potomac Design,[1] a general contractor, (plaintiff) entered into a construction contract with Pedro and Inez Ceppa to build a house. Potomac ordered roofing slate from Eurocal Trading, Inc.[2] After moving into their home, the Ceppas experienced various problems with their roof, including water leakage and slates falling off the house.

In June of 1991, Pedro and Inez Ceppa sued Potomac, Eurocal, and Windproof Roofing Company[3] in the Circuit Court for Montgomery County, Maryland. The Ceppa's alleged various theories against all or some of the defendants, including negligence, breach of contract, and breach of warranties in placing a faulty roof on their house. Windproof was the subcontractor which installed the roof and Eurocal was the manufacturer of the slate used in construction of the roof.

On August 13, 1991, Eurocal filed a Motion to Dismiss in the Circuit Court for Montgomery County, on the grounds that the court lacked personal jurisdiction over Eurocal. Although the Ceppas' responded with an Opposition to the Motion to Dismiss, Potomac never filed any document with regard to that motion. The state court granted Eurocal's motion to dismiss on December 27, 1991, because of lack of personal jurisdiction. Potomac Design did not appeal from the dismissal.

Subsequently, the Ceppas made a claim against Potomac which was resolved in their favor in binding arbitration in the amount of $98,585. A judgment for that amount in favor of the Ceppas was recorded in the Circuit Court for Montgomery County.

On January 7, 1993, Potomac filed the instant federal diversity action against Eurocal, alleging that the slate which Eurocal supplied was defective and seeking indemnification and/or contribution from Eurocal in

1. Potomac Design and Construction Co. is a Maryland corporation with its principal place of business in Maryland.

2. Eurocal Trading, Inc. d/b/a Eurocal Slate Centers is a California corporation with its principal place of business in California.

3. Windproof Roofing Co. is a Maryland corporation with its principal place of business in Maryland.

the amount of $98,585. In response, Eurocal, contending that Potomac Design's action is precluded by the earlier state court determination of lack of personal jurisdiction, and alternatively, that, this court should in any event hold personal jurisdiction not present, has moved for dismissal of the within complaint. Disagreeing, Potomac Design asserts that this Court is not precluded from reaching the personal jurisdiction issue and that personal jurisdiction is present. For the reasons set forth in this opinion, Eurocal's pending motion will be denied.[4]

## I. PRECLUSION

 In deciding the preclusion issue, this Court is governed by preclusion principles established by Maryland courts. " 'It is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.' " *Alston v. Robinson,* 791 F.Supp. 569, 577 (D.Md.1992), (quoting *Migra v. Warren City School Dist. Bd. of Educ.,* 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984)). The bar of preclusion is applicable under Maryland case law with regard to the issue of personal jurisdiction. *Annapolis Urban Renewal Authority v. Interlink, Inc.,* 43 Md.App. 286, 292, 405 A.2d 313 (1979).[5]

 Defendant Eurocal here contends that collateral estoppel bars this Court from considering whether it can exercise personal

---

**4.** Because one or more documents other than pleadings have been filed in support of the motion issues, Eurocal's motion to dismiss is treated as a motion for summary judgment pursuant to Fed.R.Civ.P. 12(b) and 56.

**5.** *See also* 18 C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* § 4430 (1981) ("If a defendant appears to challenge personal jurisdiction, disposition of the challenge is directly binding as a matter of res judicata.... The same principle means that a ruling against personal jurisdiction is also binding by way of issue preclusion so long as the same legal standards apply to basically unchanged facts.").

**6.** The term "collateral estoppel" is synonymous with issue preclusion; the term "res judicata" is synonymous with claim preclusion. *See Wool v. Maryland–National Capital Park and Planning*

jurisdiction over Eurocal in Potomac's suit for indemnification. Maryland caselaw follows the definition of collateral estoppel, sometimes called issue preclusion,[6] set forth in the Restatement (Second) of Judgments § 27, which states: " 'When an issue of fact or law is actually litigated and determined by a valid final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.' " *Cassidy v. Board of Education,* 316 Md. 50, 62, 557 A.2d 227 (1989) (quoting Restatement (Second) of Judgments § 27).

 Eurocal asserts that in the prior proceeding in the state court, the issue of whether a Maryland court could exercise personal jurisdiction over Eurocal was "actually litigated," and that therefore, this court is estopped from re-addressing herein the question of personal jurisdiction. However, the basis for personal jurisdiction was "actually litigated" only between Eurocal and the Ceppas—Potomac Design did not at any time join in litigation of that issue. Potomac and Eurocal were co-defendants in the prior suit and at no time in the state court did they proceed as adversaries, either in pleadings or otherwise.

Restatement (Second) of Judgments § 38 aids in assessing whether collateral estoppel (issue preclusion) applies in a suit where the present parties were formerly aligned on the same side.[7] That section provides:

---

*Comm'n,* 664 F.Supp. 225, 228 (D.Md.1987) (citing 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4002 (1981)).

**7.** Given the Maryland courts' extensive citation of and approval of the Restatement (Second) of Judgments provisions with regard to res judicata and collateral estoppel principles generally, the Restatement § 38 is an important source of guidance. *See, e.g., Rowland v. Harrison,* 320 Md. 223, 577 A.2d 51 (1990); *Cassidy,* 316 Md. at 62, 557 A.2d 227; *Murray Int'l Freight Corp. v. Graham,* 315 Md. 543, 547, 555 A.2d 502 (1989). This court is also inclined to turn to Restatement § 38 in the light of the approval of and reliance on that section by the Fourth Circuit and other courts. *See generally Clark–Cowlitz Joint Operating Agency v. Federal Energy Regulatory Comm'n,* 826 F.2d 1074, 1080, (D.C.Cir.1987), *cert. denied,* 485 U.S. 913, 108 S.Ct. 1088, 99 L.Ed.2d 247

"Parties who are not adversaries to each other under the pleadings in an action involving them and a third party are bound by and entitled to the benefits of issue preclusion with respect to issues they *actually litigate fully and fairly as adversaries to each other* and which are essential to the judgment rendered."

(emphasis added). "Under this approach, coparties are bound by the determination of any issue that they in fact litigated as adversaries, even though no claim was advanced by either against the other." 18 C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* § 4450 (1981).

Illustration 1 of that Restatement section provides a useful example:

"A, the owner of a building, sues B, a gas utility, and C, a contractor doing repair work on the building, contending that through the negligence of both a gas line in the building was ruptured, resulting in an explosion that demolished the building. *B and C each contend that he was not negligent and that the other was. If they have a full and fair opportunity to litigate these contentions, a judgment in favor of A against C but in favor of B is preclusive of the issue that B was not negligent in a subsequent action between C and B.*"

(emphasis added). This section suggests in the converse that if B and C do *not* make contentions as to the other's negligence, then that issue would be a proper subject for dispute in a subsequent action between B and C. In such a situation, B and C would not have litigated each other's negligence in

the prior action, and thus would not be precluded from arguing that issue in a subsequent action.

Such a scenario presents essentially the same situation as is presently before this court. As to each other, Potomac and Eurocal made no contentions whatsoever in the state court concerning whether personal jurisdiction over Eurocal existed in a Maryland court. No cross-claims were brought in the prior suit by either against the other, nor was either required to bring against the other any cross-claims or be barred from doing so in the future. Under Maryland law, the assertion of cross-claims is permissive. *See* Maryland Rule 2-331(b) ("A party *may* assert as a cross-claim any claim that party has against a co-party ...") (emphasis added); *see Oregon Ridge Dinner Theater, Inc. v. Hamlin,* 253 Md. 462, 469, 253 A.2d 382 (1969) (the Rule "permits but does not require a defendant to assert a claim against another defendant"). As a result, Potomac and Eurocal "are bound here only by the determination of issues that they in fact litigated as adversaries." *See Sullivan v. Easco Corp.,* 662 F.Supp. 1396, 1408 (D.Md.1987).[8]

Potomac Design contends that its relationship with Eurocal differed from that between Eurocal and the Ceppas.[9] Potomac further argues that those claimed factual differences were not litigated in the Circuit Court for Montgomery County, and presently will support a finding of personal jurisdiction; and that Potomac should have an opportunity to

---

(1988) ("Issue preclusion ... attaches only to such issues as the parties litigated adversely to each other in the prior litigation."); *Franklin Stainless Corp. v. Marlo Transport Corp.,* 748 F.2d 865, 867 (4th Cir.1984) ("An element of collateral estoppel, or issue preclusion, is actual, full, and fair litigation between the parties, especially when they previously were aligned on the same side of an action."); *Hydraulic & Air Equip. Co. v. Mobil Oil Corp.,* 652 F.Supp. 633, 636 (D.C.Idaho 1987); *In re Asbestos Litigation (Lee),* 517 A.2d 288, 292 (Del.Super.1986); *Fowler v. Vineyard,* 261 Ga. 454, 405 S.E.2d 678, 681 (1991); *Kearney v. Kansas Public Serv. Co.,* 233 Kan. 492, 665 P.2d 757, 772 (1983).

8. Thus, while it may be argued that Potomac and Eurocal had the opportunity to litigate between

themselves the personal jurisdiction issue in the earlier state court proceeding, neither of them, under Maryland law, can be penalized for not so doing.

9. Potomac states that "the current facts supporting an assertion of personal jurisdiction over Eurocal differ from those the Ceppas asserted in the previous action: 1) Potomac had a contract with Eurocal, whereas the Ceppas did not; 2) Potomac and Eurocal contacted each other when negotiating the sale of the black slate, whereas the Ceppas had no contact with Eurocal; and 3) Potomac had contact with Eurocal when Eurocal physically delivered the black slate to Potomac's job site, whereas the Ceppas never had any physical contact with Eurocal." Pl.'s Mem. in Opp. to Def.'s Mot. at 4.

present them in this case. This Court agrees.[10]

■ In addition, it is to be noted that the related doctrine of res judicata (claim preclusion) also does not preclude this court's consideration of personal jurisdiction.[11] Under Maryland principles of res judicata, "a judgment between the same parties and their privies is a final bar to any other suit upon the *same cause of action*, and is conclusive, not only as to all matters that have been decided in the original suit, but as to all matters *which with propriety could have been litigated* in the first suit." *Rowland v. Harrison*, 320 Md. 223, 229, 577 A.2d 51 (1990) (emphasis in the original). Arguably, under Maryland caselaw, res judicata may well operate as a broader procedural bar than does claim preclusion. However, because cross-claims are permissive under Maryland law, "a party who does not assert a cross-claim is *not* barred by res judicata in a subsequent action." *American Industrial Leasing Co. v. Law*, 458 F.Supp. 764, 769 (D.Md.1978) (interpreting a similar permissive cross-claim rule under West Virginia law) (citing *Augustin v. Mughal*, 521 F.2d 1215 (8th Cir.1975)).[12] Simply put, "[a] party who decides not to bring [a permissive cross-claim] will not be barred by res judicata, waiver, or estoppel from asserting it in a later action." 6 C. Wright, A. Miller and M. Kane, *Federal Practice and Procedure* § 1431 (1990).[13]

For all of the reasons set forth *supra*, this court concludes that under Maryland law, a Maryland court would not, in the within case, give preclusive effect, by way of collateral estoppel or res judicata, to the prior dismissal of Eurocal in the Circuit Court for Montgomery County for lack of personal jurisdiction.

## II. PERSONAL JURISDICTION

■ The material facts relevant to personal jurisdiction in the instant case are not in dispute. Eurocal advertised its slate products in *Roofer* magazine, a nationally distributed magazine available in Maryland. After reading one of the advertisements, Potomac's president called Eurocal to inquire whether Eurocal had a product similar to Vermont slate, the product requested by the Ceppas. Following that discussion, Eurocal sent Potomac a price list, brochure, and a sample of Imperial China black slate on February 4, 1988. During the month of February, following a conversation with Eurocal confirming price, Potomac ordered the Imperial China black slate and one or two mailings of documents by Eurocal to Potomac took place. The product was shipped from Eurocal in Dallas, Texas and was delivered to Potomac in Maryland, either in late February or in March of 1988.[14]

---

10. In its motion in opposition to defendant's motion to dismiss, Potomac claims it never received the filings pertaining to the motion to dismiss in the state court. That factor is not relied upon in this court's analysis of the preclusion issue. Even if Potomac had received the filings, as this opinion has pointed out, it was under no obligation to respond to them because there was no cross-claim filed by either Potomac or Eurocal against the other, nor did there exist any adversarial relationship between Eurocal and Potomac.

11. Although neither side expressly relies on res judicata principles, Eurocal attempts to support its argument by citing a case which discusses the effect of res judicata. *See Hanscome v. Perry*, 75 Md.App. 605, 612 n. 2, 542 A.2d 421 (1988).

12. If Potomac had cross-claimed in the prior suit, a different question would be before this court as to whether it would be precluded by res judicata from raising the personal jurisdiction issue in this case. *Cf. Maryland Automobile Insurance Fund v. Soffas*, 89 Md.App. 663, 599 A.2d 837 (1991) ("summary judgment motion by

alleged owner of automobile, in personal injury suit brought against it by insureds, was not directed at intervening party, so that the intervenor was not required to respond; however, because intervenor had fair opportunity to be heard on the issue it was thus estopped from seeking to recover indemnification from alleged owner of automobile").

13. While that section of Wright, Miller, & Kane discusses Fed.R.Civ.P. 13(g), it is to be noted that the Maryland courts follow interpretations of that federal rule in analyzing the comparable Maryland Civil Rule of Procedure 2–331 (Counterclaim and Cross-Claim). *Edmunds v. Lupton*, 253 Md. 93, 99, 252 A.2d 71 (1969).

14. The parties have stipulated as follows: "That the slate which is the subject matter of this dispute was picked up from the Eurocal Distribution Center in Dallas, Texas by Womco/Cook's Transport, a private shipping carrier, and delivered to Potomac, Maryland where said slate was used. The delivery of the slate was made by a private shipping company having no affiliation

■ Whether personal jurisdiction exists over a nonresident defendant in a case like this involves the use of a two-step inquiry. "In order for this court to exercise personal jurisdiction over a defendant, Maryland's long-arm statute must authorize and due process protections of the United States Constitution must permit the exercise of that jurisdiction. Although Maryland law determines whether a section of the Maryland long-arm statute authorizes jurisdiction, federal law controls whether the exercise of that jurisdiction violates federal due process protections." *Bass v. Energy Transportation Corp.*, 787 F.Supp. 530 (D.Md.1992) (citing *Catalana v. Carnival Cruise Lines, Inc.*, 618 F.Supp. 18, 20 (D.Md.1984), aff'd, 806 F.2d 257 (4th Cir. 1986) (citing *Craig v. General Finance Corp. of Illinois*, 504 F.Supp. 1033, 1036 (D.Md. 1980))).[15]

### A. Maryland Long–Arm Statute

The relevant sections of the Maryland long-arm statute provide in pertinent part:

(a) If jurisdiction over a person is based solely upon this section, he may be sued only on a cause of action arising from any act enumerated in this section.

(b) A person may exercise personal jurisdiction over a person, who directly or by an agent:

(1) Transacts any business or performs any character of work or service in the State;

(2) Contracts to supply goods, food, services, or manufactured products in the State.

Md.Cts. & Jud.Proc.Code Ann. § 6–103(b)(1) and (b)(2) (1989).

■ Maryland courts have interpreted its long-arm statute to extend jurisdiction over nonresident defendants to the limits permitted by the Due Process Clause of the Fourteenth Amendment of the United States Constitution. *Bass*, 787 F.Supp. at 534 (citing *A.S.C. Leasing, Inc. v. Porter*, 651 F.Supp. 384, 385 (D.Md.1987); *Mohamed v. Michael*, 279 Md. 653, 657, 370 A.2d 551 (1977); *Geelhoed v. Jensen*, 277 Md. 220, 224, 352 A.2d 818 (1976); *Krashes v. White*, 275 Md. 549, 341 A.2d 798 (1975)).

Eurocal contends in an affidavit authored by its president that it did not transact business in Maryland. However, under the Maryland long-arm statute, "a nonresident who has never entered the state, either personally or through an agent, may be deemed to have 'transacted business' in the state within the meaning of subsection (b)(1)." *Snyder v. Hampton Industries, Inc.*, 521 F.Supp. 130, 141 (D.Md.1981). As long as the nonresident's "actions culminate in 'purposeful activity' within the State," jurisdiction is proper under (b)(1). *Sleph v. Radtke*, 76 Md.App. 418, 427, 545 A.2d 111 (1988), *cert. denied*, 314 Md. 193, 550 A.2d 381 (1988) (exercising jurisdiction over a defendant in a deficiency action where the defendant executed a purchase money mortgage on Maryland proper-

---

with either the Plaintiff or Defendant in this matter. The plaintiff in this matter paid the costs of said shipping as part of their purchase of said slate." Along with the stipulation, the parties submitted a copy of the contract setting forth the terms of their agreement. That document states that delivery was F.O.B. Eurocal Supply. Thus, at a minimum, Eurocal participated, to the extent indicated, in delivery of the slate to Potomac Design in Maryland.

In *Snyder v. Hampton Industries, Inc.*, 521 F.Supp. 130, 146 (D.Md.1981), aff'd, 758 F.2d 649 (4th Cir.1985), the Court stated that a relevant contact existed where the defendant "caused the products to be delivered to the customers in Maryland." There, delivery by common carrier from a foreign state to Maryland, following an F.O.B. shipment from that foreign state, was deemed an action attributed to the defendant-shipper and was constituted as a contact for purposes of finding personal jurisdiction

over the defendant. In this case that type of contact is not determinative in and of itself, because this Court finds that other contacts support a finding of personal jurisdiction. Nevertheless, the F.O.B. argument provides an additional basis for concluding that personal jurisdiction exists.

15. This case involves "specific jurisdiction," in which the suit arises out of the defendant's contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984). " 'Specific' jurisdiction contrasts with 'general' jurisdiction, pursuant to which 'a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum.' " *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n. 15, 105 S.Ct. 2174, 2182 n. 15, 85 L.Ed.2d 528 (1985) (quoting *Helicopteros*, 466 U.S. at 414 n. 9, 104 S.Ct. at 1872 n. 9).

ty in favor of a Maryland mortgagee as part of an investment).

Utilizing that standard, the court in *Jason Pharmaceuticals, Inc. v. Jianas Bros. Packaging Co.,* 94 Md.App. 425, 433, 617 A.2d 1125 (1993), determined that the defendant had transacted business in Maryland within the meaning of the long-arm statute where the defendant had initiated negotiations by calling plaintiff, a seller located in Maryland, to express interest in seller's machines, engaged in negotiations with seller, entered into a contract with seller, and sent a down payment into Maryland. Personal jurisdiction pursuant to the Maryland long-arm statute was also deemed to be present in *Prince v. Illien Adoptions International, Ltd.,* 806 F.Supp. 1225, 1229 (D.Md.1992), where the contract resulted from defendant's solicitation of business in Maryland. There, the plaintiff read about defendant's services in a newsletter circulated in Maryland, defendant mailed its brochure to plaintiff in Maryland, plaintiff signed the agreement in Maryland and sent it to defendant, and the contract created a continuing obligation involving the parties.

Given these interpretations of the Maryland long-arm statute, it appears the statute is satisfied under the facts of this case. Eurocal's solicitation of business from a Maryland corporation through its initial advertisements and later mailings culminated in purposeful activity within Maryland—the creation of a contract to purchase Eurocal's slate tiles. Accordingly, this Court concludes that the requirements of sections (b)(1) and (b)(2) of Maryland's long-arm statute are satisfied in this case.

### B. Due Process

■ Due process requires that a nonresident defendant "have minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

Minimum contacts exist where a "defendant's conduct and connection with the forum State [are] such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,*

444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). The Supreme Court has emphasized that, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474–75, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985), (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958)).

Once a court decides that minimum contacts have been established, the court must consider whether the exercise of jurisdiction comports with "fair play and substantial justice." In so doing, the court must consider such factors as the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, and the interstate judicial system's interest in obtaining efficient resolution of controversies. *Burger King,* 471 U.S. at 476–77, 105 S.Ct. at 2184.

*Nueva Engineering, Inc. v. Accurate Electronics, Inc.,* 628 F.Supp. 953 (D.Md.1986), provides a helpful summary of the Fourth Circuit's approach to the minimum contacts requirement.

"[T]he courts have considered various factors in the contract situation, including whether the parties contemplated that the work would be performed, where payment was made, etc. The strongest factor that seems to have emerged, however, is a determination of whether the defendant initiated the business relationship in some way.... *The Fourth Circuit has generally found jurisdiction in contract cases* .... The Fourth Circuit also seems to have adopted the determination of whether the defendant initiated the business relationship in some way as a dispositive factor...."

*Id.* at 955 (emphasis added) (citations omitted). *See also August v. HBA Life Ins. Co.,* 734 F.2d 168 (4th Cir.1984) (finding jurisdiction where insurer solicited execution of a rider by mail to owner of policy in Virginia, even though policy was originally issued to the owner in Arizona while an Arizona resi-

dent); *Du–Al Corporation v. Rudolph Beaver, Inc.*, 540 F.2d 1230 (4th Cir.1976) (personal jurisdiction existed under Maryland law where contract was negotiated and prepared in Massachusetts, sent to Maryland for signing, returned to Massachusetts, and contract was performed in Maryland).

Since Eurocal solicited business through its advertisements, it appears that it "initiated" the business relationship with Potomac. Even if advertising is not considered "initiation," when a defendant takes "steps preparatory to initiating a new phase of that relationship," that factor suffices to satisfy minimum contacts. *See Nueva*, 628 F.Supp. at 956. When Eurocal sent its brochures, price list, and samples, it was soliciting business from a Maryland resident. That factor strongly indicates that the minimum contacts test is satisfied.

*Cancun Adventure Tours, Inc. v. Underwater Designer Co.*, 862 F.2d 1044 (4th Cir. 1988), is a particularly instructive case regarding minimum contacts. There, the plaintiff, a Virginia corporation, brought suit against the defendant, a Florida corporation, for breach of contract, breach of warranty, and fraud in the sale of a modified air compressor. The relevant contacts in *Cancun* are markedly similar to those in the instant case:

> "In the spring of 1986, Jamie Lewis, who resides in Virginia and is president of Cancun, saw a UDC advertisement in the nationally distributed magazine, *Scuba Times.* Lewis telephoned Paul Califano, UDC's sole owner and president, about Cancun's need for an air compressor system that could fill seventy-five to one hundred scuba tanks per day. Califano mailed a quotation for an air compressor to Cancun in Virginia. Lewis subsequently decided that the proposed compressor was not adequate for Cancun's purposes. On May 7, 1986, Califano sent a second proposal to Cancun in Virginia outlining terms of sale for a 15–20 CFM (cubic feet per minute), 5,000 PSI (pounds per square inch) modified fresh air compressor. Cancun agreed to purchase the compressor based on Califano's representations that

the particular model was adequate for Cancun's needs.

> In June of 1986, the compressor was installed at the dive shop in Cancun, Mexico."

*Id.* at 1045–46. Thereafter, the compressor began variously to malfunction and Cancun subsequently filed suit.

In assessing the facts in *Cancun*, the Fourth Circuit concluded that sufficient minimum contacts were present to warrant an exercise of personal jurisdiction over the defendant. The court noted that although the advertisement in *Scuba Times*, standing alone, was not enough to confer jurisdiction, "appellants subsequently negotiated and undertook a contractual obligation with a Virginia resident. UDC mailed purchase orders to Cancun Adventure Tours in Virginia and accepted payment from Virginia." *Id.* at 1046.

In the instant case, defendant advertised in a nationally distributed magazine, mailed brochures and samples to Maryland, entered into a contract with a Maryland resident, arranged for delivery to Maryland, and apparently accepted payment from a Maryland corporation. Thus, as in *Cancun*, the defendant's "relations with the forum state were not unique or insignificant and [plaintiff] is not attempting to manufacture jurisdiction based upon its unilateral activity." *Id.* at 1047 (comparing *Chung v. NANA Dev. Corp.*, 783 F.2d 1124, 1126–27 (4th Cir.1986)). *See also Greenwood v. Tides Inn, Inc.*, 504 F.Supp. 992, 995 (D.Md.1980) ("The due process standard is also met since by sending sheafs of newsletters directly to Maryland residents, defendant availed itself of the privilege of conducting business in this forum state.").

In this case, exercise of personal jurisdiction over the defendant comports with fair play and substantial justice. Eurocal has not shown any special hardship which will result from defending this suit in Maryland. The courts have recognized that in this modern world, it is not unfair to require defendants to travel some distance to defend lawsuits. *See, e.g., Nueva*, 628 F.Supp. at 957. Furthermore, Maryland has an interest in providing its citizens with convenient relief

where out-of-state sellers provide allegedly defective products for use in Maryland. Because Eurocal's "conduct and connection with the forum State are such that [it] should reasonably anticipate being haled into court" in Maryland, this Court concludes that due process considerations are satisfied. *World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. at 567.

### III. CONCLUSION

For the foregoing reasons, this Court holds that preclusion principles do not bar plaintiff from asserting personal jurisdiction over defendant in this case and that personal jurisdiction over Eurocal is present in connection with Potomac's claims herein. Accordingly, defendant may not prevail upon its pending motion to dismiss.

George A. Nilson, Piper & Marbury, Susan Goering, American Civ. Liberties Union of Maryland, Thomas Page Lloyd, Awilda R. Marquez, Piper & Marbury, Baltimore, MD, Deborah A. Jeon, American Civ. Liberties Union, Cambridge, MD, Bruce T. Carton, Law Office, Columbia, MD, for plaintiff.

Roger N. Powell, Law Office, Pikesville, MD, for defendants.

Roger N. Powell, Law Office, Pikesville, MD, Anthony Victor Teelucksingh, Larry M. Wolf, Whiteford, Taylor and Preston, Baltimore, MD, for Kenneth E. Morris.

Richard D. Bennett, U.S. Atty., Baltimore, MD, Thomas P. Bernier, White and Karceski, Towson, MD, Joseph J. Mahoney, Law Office, Elkton, MD, for Kenneth E. Truitt.