John CAREY, et al.

v.

**FIBERFLOAT CORPORATION d/b/a Harley Boat Company, et al.**

No. K–91–3490.

United States District Court,
D. Maryland.

April 22, 1994.

Stephen F. White and Wright, Constable & Skeen, Baltimore, MD, for plaintiff Carey.

J. Marks Moore, III, James W. Bartlett, III, Samuel Maddox Riley and Wilson, Elser, Moskowitz, Edelman & Dicker, Baltimore, MD, for defendant and third party plaintiff Fiberfloat Corp.

John B. Sinclair, Mauricio E. Barreiro and Miles & Stockbridge, Baltimore, MD, for defendant GL III Associates, Inc.

Michael E. Yaggy, Diane M. Lank and Piper & Marbury, Baltimore, MD, for defendant and third party defendant Aerospace Avionics, Inc.

*MEMORANDUM AND ORDER*

FRANK A. KAUFMAN, Senior District Judge.

(1) Reference is hereby made to the Motion to Dismiss for Lack of Personal Jurisdiction, filed with this Court on January 10, 1994, by defendant and third-party defendant Aerospace Avionics, Inc. ("AAI"). Reference also is made to the parties' subsequent filings

in connection thereto. For the reasons to be set forth in this Memorandum & Order, AAI's motion to dismiss it from this case for lack of personal jurisdiction is hereby granted.

(2) This case arises out of an electrical accident which injured plaintiff John Carey. Plaintiff and his wife, both citizens and residents of Delaware, allege that, in 1990, they purchased a used 1984–model boat in Maryland that was constructed by defendant Harley Boat Company ("Harley"), a Florida corporation. The boat was to be used in connection with plaintiffs' Delaware business, Carey Diesel, Inc. Shortly thereafter, in 1990, plaintiffs arranged with Harley for that company to refurbish the boat, which was to include a complete overhaul of the boat's electrical system. Pursuant to that 1990 agreement, plaintiffs brought the boat to Ocean City, Maryland, in September of 1990, where it was picked up by Harley and transported to Florida for the work to be done. Upon completion of the repairs, and the installation of a new battery charger,[1] John Carey retrieved the boat in Florida in 1991 and returned it to Delaware. Upon his return, plaintiffs assert that, on June 15, 1991, he suffered severe injuries while testing the boat's new generator near his Dover, Delaware, home, resulting from an electrical discharge caused, in whole or in part, by the battery charger. That charger was marketed under the name "Dytek."

Plaintiffs originally brought this suit against Harley, GL III Associates (formerly known as Dytek Laboratories, Inc.) ("Dytek"), and Charles Industries, Ltd,[2] alleging negligence, strict liability, and breaches of warranties. On or about February 24, 1993, Harley filed a third-party complaint seeking contribution and indemnity from AAI, who Harley claimed was the designer and manufacturer of the Dytek battery charger allegedly responsible for the accident. Plaintiffs subsequently amended their complaint to include AAI as a direct defendant. This Court possesses subject-matter jurisdiction by virtue of 28 U.S.C. § 1332 as a result of diversity of citizenship among the parties. AAI is a New York Corporation with its principal office and place of business in New York and seemingly is "owned" in some manner by British Tire and Rubber Co., a British corporation.[3]

AAI, at the time independently "owned," acquired Dytek during the 1970s, and Dytek did not begin manufacturing battery chargers or other marine products until sometime thereafter.[4] In 1987, AAI was sold to Hawker Siddeley, Inc. At the time of the sale, Dytek was separated, and its "ownership" was transferred to two of the three former stockholders of AAI—James Dunn and Russell Kittel.[5] Dytek continued to sell chargers after 1987, and, in 1990, its marine products business was sold to Charles Industries. What remained of Dytek became GL III.

1. Plaintiffs, in their Mem. in Oppos. to Mot. to Dismiss, filed with this Court on February 16, 1994, seem to contend that one of defendant Harley's defenses in this case is that the battery charger was already in the boat prior to the repairs, at the time when the boat was delivered to Harley in Maryland. However, the record before this Court, including those places in the record to which plaintiffs cite, do not support that assertion, nor do they give any indication that Harley has raised such a defense. The boat was manufactured in 1984, well before the estimated date of the charger's creation. *See* Harley's February 14, 1994, Mem. in Oppos. to Mot. to Dismiss, Ex. 5, at 61. Also, plaintiffs themselves, in their Amended Complaint of January 10, 1992, aver that Harley installed the charger in Florida as part of the boat's refurbishment. In any event, even if the charger were in the boat at the time plaintiffs claim, that factor would not alter this Court's disposition of this motion.

2. Charles Industries has been dismissed from this case by stipulation of all parties.

3. Harley, in its February 14, 1994, Mem. in Oppos. to AAI's Mot. to Dismiss, states that its assertion regarding AAI's present "ownership" is based upon the representations of AAI's counsel. AAI, in its declaration attached to AAI's February 28, 1994, Reply to Mems. in Oppos. to its Mot. to Dismiss, does not include that information. In any event, the identity of the current "ownership" of AAI does not affect the disposition of this motion.

4. *See* Harley's Mem. in Oppos. to Mot. to Dismiss, Ex. 3, at 9–11.

5. *Id.,* Ex. 2, at 41–43.

GL III dissolved shortly thereafter.[6]

(4) As this Court previously has stated, when faced with a motion to dismiss based on lack of personal jurisdiction,

> [T]he plaintiff has the burden of proving the factual basis necessary to support this Court's exercise of *in personam* jurisdiction.... The plaintiff must sustain its burden of proof through sworn affidavits or other competent evidence.... In the event of a dispute between the affidavits offered by the opposing parties, the Court is obligated to resolve the conflict in the light most favorable to plaintiff.

*Nichols v. G.D. Searle & Co.*, 783 F.Supp. 233, 235–36 (D.Md.1992), *aff'd*, 991 F.2d 1195 (4th Cir.1993).

> In order for this court to exercise personal jurisdiction over a defendant, Maryland's long-arm statute must authorize and due process protections of the United States Constitution must permit the exercise of that jurisdiction. Although Maryland law determines whether a section of the Maryland long-arm statute authorizes jurisdiction, federal law controls whether the exercise of that jurisdiction violates federal due process protections.

*Bass v. Energy Transp. Corp.*, 787 F.Supp. 530 (D.Md.1992).

(5) In this case, none of AAI's alleged contacts with Maryland relate to the tortious act of which plaintiff complains. The battery charger was designed, sold and installed elsewhere, and the accident itself took place in Delaware. Consequently, the only basis upon which jurisdiction can be asserted over AAI is " 'general' jurisdiction, pursuant to which 'a State exercises personal jurisdiction over a defendant in a suit not arising out of or relating to the defendant's contacts with the forum.' " *Potomac Design, Inc. v. Eurocal Trading, Inc.*, 839 F.Supp. 364, 369 n. 15 (D.Md.1993) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n. 15, 105 S.Ct. 2174, 2182 n. 15, 85 L.Ed.2d 528 (1985)). Maryland law provides for general jurisdiction over non-resident defendants through Md.Cts. & Jud.Proc.Code Ann. § 6–103(b)(4).[7] *See Bass*, 787 F.Supp. at 534.

■ "Maryland courts have interpreted its long-arm statute to extend jurisdiction over nonresident defendants to the limits permitted by the Due Process Clause of the Fourteenth Amendment of the United States Constitution." *Potomac Design*, 839 F.Supp. at 639; *see also Bass*, 787 F.Supp. at 534; *Geelhoed v. Jensen*, 277 Md. 220, 224, 352 A.2d 818 (1976). "Therefore, federal law provides valuable guidance in interpreting the statute." *Nichols*, 783 F.Supp. at 236. This Court recently propounded a detailed description of the type of contacts needed to satisfy constitutional requirements of due process. *See Potomac Design*, 839 F.Supp. at 368–70.[8]

■ (6) The fact that AAI appears to have exerted "considerable control over the activities of" Dytek, along with several other factors, leads this Court to "pierce the veil separating [AAI] from [Dytek] for jurisdictional purposes." *Mylan Labs, Inc. v. Akzo, N.V.*, 2 F.3d 56, 61 (4th Cir.1993); *see also, e.g., Copiers Typewriters Calculators, Inc. v. Toshiba Corp.*, 576 F.Supp. 312, 324 (D.Md. 1983). At the time AAI acquired Dytek, the

---

6. *Id.*, Ex. 3, at 4–5.

7. § 6–103 provides in pertinent part:
   (a) *Condition*—If jurisdiction over a person is based solely upon this section, he may be sued only on a cause of action arising from any act enumerated in this section.
   (b) *In general*—A court may exercise personal jurisdiction over a person, who directly or by an agent:
   ....
   (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives sub-

stantial revenue from goods, food, services, or manufactured products used or consumed in the State;
....

8. That case involved "specific jurisdiction." *Id.* 839 F.Supp. at 369 n. 15. Where, as here, the cause of action is unrelated to a defendant's contacts with the forum, a court may exercise jurisdiction only if the defendant's contacts are of a "continuous and systematic" nature. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416, 104 S.Ct. 1868, 1873, 80 L.Ed.2d 404 (1984).

latter company only had one employee.[9] According to affidavits of former AAI officers, AAI purchased Dytek primarily to acquire Dytek's trade name.[10] The deposition testimony of Russell Kittel, AAI's Chief Operating Officer ("COO") seems to indicate that AAI maintained Dytek as a corporate entity solely in order to ensure that the Dytek trade name remain protected.[11] Dytek did not maintain a separate payroll, instead listing its employee or employees upon AAI's payroll,[12] and at least one AAI executive, Kittel, characterized Dytek as a department of AAI.[13] Additionally, AAI seems to have exercised control over Dytek's major hiring decisions, engaging Joseph D'Airo as Dytek's chief engineer in 1980. According to D'Airo, AAI was intimately involved with the assembly of Dytek's battery chargers.[14] For the above reasons, the record, when viewed "in the light most favorable to plaintiff[s]," *Nichols*, 783 F.Supp. at 235–36, satisfies the test required by Maryland law to treat AAI and Dytek as identical, for purposes of determining jurisdiction.

■ (7) Under principles of general jurisdiction established pursuant to Maryland law, contacts of a defendant to Maryland "must be sufficiently extensive, continuous, and systematic in order to satisfy Maryland's (b)(4) statutory requirements of 'overall fairness.'" *Bass*, 787 F.Supp. at 535 (quoting *Goodyear Tire & Rubber Co. v. Ruby*, 312 Md. 413, 422–23, 540 A.2d 482 (1988)); *see also Ratliff v. Cooper Laboratories, Inc.*, 444 F.2d 745, 748 (4th Cir.), *cert. denied*, 404 U.S. 948, 92 S.Ct. 271, 30 L.Ed.2d 265 (1971) (employing similar language in context of federal due-process analysis). "Because specific jurisdiction has expanded tremendously, . . . [and] plaintiffs now may generally bring their claims in the forum in which they arose[,] . . . broad constructions of general jurisdiction should be generally disfavored." *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1200 (4th Cir.1993) (citations omitted). In evaluating the sufficiency of defendant's contacts to the forum, this Court should "focu[s] on the quality and nature of the contacts[,] [not] merely . . . count the contacts and quantitatively compare this case to other preceding cases." *Nichols*, 783 F.Supp. at 238. Because this case involves a non-resident plaintiff, Maryland's interest in resolving this dispute is lessened. *See Ratliff*, 444 F.2d at 748; *cf. Lee v. Walworth Valve Co.*, 482 F.2d 297, 299–300 (4th Cir.1973) (distinguishing the situation in *Lee* from that in *Ratliff* on that basis).

(8) During the time in which it was "owned" by AAI, Dytek did not maintain any office, own or rent any real property, register or qualify as a business in Maryland, or pay any taxes in Maryland.[15] During the relevant period, Dytek does appear to have utilized a network of independent dealers and distributors who marketed Dytek's products in a large number of states.[16] Occasionally, Dytek would sell its chargers directly to original equipment manufacturers ("OEM"), who would install the chargers in their boats.[17] At its peak, Dytek manufactured approximately 5,000 battery chargers per year.[18] William Rauft, chief salesperson and general manager of Dytek during its ownership by AAI, was Dytek's only sales employee; all other sales were conducted through distributors and dealers.[19] The only direct sales to any Maryland company or person which Rauft, or any other deponent, specifically could recall were transactions with Topaz Marine, an OEM, to whom Dytek sold

9. Harley's Mem. in Oppos. to Mot. to Dismiss, Ex. 3, at 9.

10. *Id.*, Ex. 1, at 13–14.

11. *Id.*, Ex. 2, at 29.

12. *Id.*, Ex. 1, at 28–29; Ex. 2 at 34–35, 49–50.

13. *Id.*, Ex. 2, at 55.

14. *Id.*, Ex. 5, at 13–14, 51, 140–41.

15. AAI's Reply to Mems. in Oppos. to Mot. to Dismiss, Ex. 1, at 30–31.

16. Harley's Oppos. to Mot. to Dismiss, Ex. 7, at 18–20.

17. *Id.*, Ex. 7, at 18.

18. AAI's Reply to Mems. in Oppos. to Mot. to Dismiss, Ex. 1, at 34.

19. Harley's Oppos. to Mot. to Dismiss, Ex. 7, at 21.

chargers on a regular basis. Apparently, Dytek sold, on average, four chargers to Topaz each month for a period of approximately two years, from 1986–87, comprising less than one percent of Dytek's total annual output.[20] Rauft also identified four other businesses located in Maryland with whom Dytek had some type of dealings.[21] Rauft stated that he visited Maryland once per year and made telephone marketing calls to Maryland dealers, as part of his marketing efforts.[22] He noted that Dytek placed advertisements in national magazines, but recalled only one instance in which he had delivered any promotional literature to a Maryland location.[23] Rauft further asserted that he believed some of Dytek's non-Maryland distributors regularly shipped Dytek products to Maryland, among other places, although he could only be certain of that belief with regard to one such New Jersey-based distributor.[24] Rauft speculated that "less than 10 percent" of Dytek sales from 1977 through 1987 could be attributed to Maryland, adding that that estimate "[p]robably . . . was a little bit on the high side." [25]

Kittel, AAI's COO, commented that Dytek "may have a sales rep[resentative]" in Maryland, but noted that Rauft would know for certain.[26] AAI itself retained a sales representative in Washington, D.C., in order in part to manage AAI's "considerable amount of business" in Maryland.[27] All of that business stemmed from defense-related contracts with the federal government.[28] Although AAI claims that it cannot provide figures for the period when it owned Dytek, stating that all Dytek records were retained by that company upon its separation from AAI in 1987, it has provided revenue figures for the years from 1988 through 1991.[29] During that time period, revenues attributed to sales in Maryland fluctuated widely, from a low of $6,840 in 1991 to a high of $419,757 in 1990. However, even that highest figure represents only approximately 1.2 percent of AAI's gross sales for that year.[30]

(9) At the outset, this Court notes that "advertising and solicitation activities alone do not constitute the 'minimum contacts' required for general jurisdiction." *Nichols*, 991 F.2d at 1200 (citing *Ratliff*, 444 F.2d at

**20.** AAI's Reply to Mems. in Oppos. to Mot. to Dismiss, Ex. 1, at 37.

**21.** Harley Mem. in Oppos. to Mot. to Dismiss, Ex. 7, at 25–26, 29. Upon being presented with a list which Rauft stated should contain the names of any Dytek customers or other businesses with whom Dytek had dealings, Rauft identified Coast Navigation, in Annapolis, Maryland, as a "distributor catalog company"; L & L Marine, of West Ocean City, as a "marine electronics dealer"; and Martek of Maryland, located in North Ocean City, and Jackson Marine also as dealers. Rauft did not specify what types of relationships these businesses had with Dytek, although he did state that the listing naming Jackson Marine "looks like a customer repair." *See id.*, Ex. 7, 24–26, 29.

**22.** *Id.*, Ex. 7, at 32.

**23.** *Id.*, Ex. 7, at 38–41.

**24.** *Id.*, Ex. 7, at 28–29, 34–35.

**25.** *Id.*, Ex. 7, at 43.

**26.** *Id.*, Ex. 2, at 64. Later in the transcript, Kittel seems to indicate that Dytek did maintain some sales representatives in Maryland, as independent contractors rather than employees. *Id.*, Ex. 2, at 64–65. Although this testimony seems to contradict that of Rauft, who asserted that he

was the only salesman on behalf of Dytek, this Court views the evidence in the light most favorable to plaintiffs and, for purposes of this motion, will treat Kittel's testimony on this point as the more authoritative. Kittel reaffirmed that Dytek maintained no sales office in Maryland; Kittel did not estimate the number of sales representatives who were active in Maryland. *See id.*

**27.** *Id.*, Ex. 2, at 66.

**28.** AAI's Reply to Mems. in Oppos. to Mot. to Dismiss, Ex. 3, at 3. Kittel, in his deposition testimony, identified the Patuxent Naval Station as an AAI customer during the 1980s. *See* Harley's Mem. in Oppos. to Mot. to Dismiss, Ex. 2, at 66.

**29.** Plaintiffs, in their opposition to AAI's motion, complain of AAI's alleged refusal to cooperate by providing informal discovery with regard to the issue of jurisdiction, despite AAI's pledge to this Court so to do. Specifically, plaintiffs cite AAI's failure to provide the parties with a declaration setting forth all relevant facts relating to jurisdiction. AAI since has attached such a declaration, to its February 28, 1994, Reply. The facts set forth in that declaration are sufficient to enable this Court to resolve AAI's motion.

**30.** AAI's Reply to Mems. in Oppos. to Mot. to Dismiss, Ex. 3, at 3.

748). In *Nichols,* the defendant, G.D. Searle & Company, a large pharmaceutical concern which marketed an intrauterine device alleged by plaintiffs in that case to be harmful, *id.* at 1198, employed "17–21 promotional representatives and two district managers" in Maryland and provided its Maryland employees with automobiles, samples and promotional literature. *Id.* at 1200. Some of the representatives were responsible "for promoting the use of Searle's pharmaceutical products by physicians, hospitals, and wholesalers," and other representatives dealt directly with consumers. *Nichols,* 783 F.Supp. at 238. Further, Searle "had $9,000,000—$13,000,000 annual sales in Maryland between 1983 and 1987, which constituted approximately two percent of its total sales." *Nichols,* 991 F.2d at 1198.

In this case, Dytek and AAI's contacts with Maryland seem even more tenuous than were those in *Nichols,* which were not deemed sufficient to support § 6–103(b)(4) long-arm jurisdiction. Dytek conducted business with only a handful of Maryland dealers or distributors, and even fewer "consumers" (OEMs). In fact, the only consumer sales that were specifically remembered by George Rauft, in his affidavit, were those made to Topaz Marine, which purchased four chargers per month for a period of two years out of a total annual production by Dytek of 5000. Although, according to Kittel, Dytek may have retained sales representatives in Maryland, so too did Searle, and the Fourth Circuit has made clear that the activities of such representatives, in and of themselves, do not suffice for purposes of general jurisdiction.

The revenues obtained by Dytek and by AAI from their dealings in Maryland also appear insufficient themselves to confer jurisdiction upon AAI. While the figures provided by AAI for 1988–1991 at times constitute quite substantial actual amounts, they represent a rather small percentage of AAI's total revenue. With regard to Dytek's revenues during the period in which it was owned by AAI, this Court has only Rauft's testimony upon which to rely. Rauft's estimate of "less than ten percent" of Dytek's revenue as attributable to Maryland, a figure which he later characterized as "on the high side," falls short of itself establishing this Court's jurisdiction over AAI. Chief Judge Black, in *Nichols,* 783 F.Supp. at 240 n. 5, surveyed the relevant case law and concluded that "plaintiffs cannot rely upon revenue alone to draw [defendant] into Maryland." Judge Black noted that one Fourth Circuit decision, *Lee v. Walworth Valve Co.,* 482 F.2d 297, 299–301 (4th Cir.1973), which appeared "to consider revenue as relevant" in sustaining its jurisdiction, "indicated that it would not have upheld jurisdiction had the plaintiff been a non-resident and had there been the taint of forum shopping—as in the *Ratliff* case." *Nichols,* 783 F.Supp. at 240 n. 5. Thus, Judge Black declined jurisdiction despite "Searle's substantial revenue" from Maryland. *Id.* The Fourth Circuit, in affirming that decision, appears to have ignored Searle's Maryland revenues completely, focusing instead upon the presence in Maryland of Searle's sales force, its drug research, its managerial meetings in that state, and its purchases in Maryland. *See Nichols,* 991 F.2d at 1200. A recent decision by the District of Columbia Court of Appeals, *Hughes v. A.H. Robins Co., Inc.,* 490 A.2d 1140 (D.C. 1985), which was quoted approvingly by Judge Black in *Nichols,* 783 F.Supp. at 240 n. 5, noted that in *Ratliff* the Fourth Circuit never mentioned corporate revenues despite the fact that the Fourth Circuit "surely must have been aware that one of the two defendants, Sterling Drug Company, was one of the leading drug manufacturers in the nation and undoubtedly derived considerable revenue from sales of its products" in the forum state. *Hughes,* 490 A.2d at 1151 n. 19. The court in *Hughes* denied jurisdiction over the defendant in that case despite the over three million dollars in annual revenues derived by the defendant from the District of Columbia. *Id.* at 1151. The plaintiff in *Hughes,* like those in this case, was not a resident of the state in which she brought her action, although she was a resident of the neighboring state of Virginia. *Id.* at 1143, 1151. The within case further resembles *Hughes* in that, in this case, like in *Hughes,* no allegations of forum shopping on the part of plaintiffs have been made. Nevertheless, the "less than ten percent" of Dytek's revenues

attributable to Maryland, and the much lower percentage of AAI's revenues which similarly can be so imputed, do not support the assertion of jurisdiction in this case in the light of the insufficiency of AAI's other contacts and in view of Maryland's limited interest in resolving this dispute brought by a non-resident plaintiff concerning acts which do not arise out of, or relate to, Maryland.

(10) For the reasons set forth *supra* in this Memorandum & Order, this Court, by separate Order of even date herewith, hereby grants defendant and third-party defendant AAI's motion to dismiss them from this action for lack of personal jurisdiction.

(7) Copies of this Memorandum and Order are today being mailed to all counsel of record.

(8) It is so ORDERED this 22nd day of April, 1994.